PATRICK FITZSIMONS v. MARTIN FOLEY.

*Partnership—Accounting—Purchase of real estate by one partner—Trust.*

1. Where, for nearly 25 years, a partnership business was carried on without written accounts as between the partners, the evidence of their dealings resting in parol, during which time each one drew from the business as his needs required, without question or protest from his partners, the safest and most equitable course is to leave the partners as they left themselves at time of the practical dissolution of the firm at the expiration of said term of years.

2. At an execution sale to satisfy a judgment owned by a partnership, one of the *three* partners bid in the land in his own name, and assumed to apply the purchase price on the judgment. He received the usual sheriff's deed, and about a year and a half afterwards the other partners deeded their interest in the land to a third party, who filed a bill to compel a conveyance to him by the other partner of an undivided two-thirds of the land, and secured a decree for such conveyance, subject to the defendant's rights on a final settlement between the partners, should an accounting be thereafter had between them. The theory of the bill was that the action of the defendant was unknown to his partners, he concealing it from them until after the dissolution of the partnership, and that they *each* had an equitable estate in an undivided third of the land. The defendant's claim was that the firm received more than the price the land sold for from him many years before, which money was never repaid or drawn out by him, and that he used so much of the judgment as he did in preference to drawing the money from the firm business, as less liable to injure the firm, and that his action was in harmony with the general practice of each partner. He denied that any dissolution had ever taken place, except as the firm ceased to do business, or that any settlement or accounting had ever been had between the partners. On a review of the testimony the defendant's version is found to be correct, and the decree is reversed and the bill dismissed.

Appeal from Houghton. (Williams, J.) Argued April 24, 1890. Decided May 9, 1890.

Bill to declare a resulting trust in land, and for a conveyance, etc. Defendant appeals from a decree granting the relief prayed for. Reversed and bill dismissed. The facts are stated in the opinion.

*Stone & Gray,* for complainant, contended:

1. The testimony shows that the defendant took the conveyance in his own name in fraud of the rights of his partners, and a trust resulted in their favor; citing How. Stat. § 5571; *Fisher v. Fobes,* 22 Mich. 454; *Linsley v. Sinclair,* 24 Id. 380; *Ransom v. Ransom,* 31 Id. 301; *Terry v. Tuttle,* 24 Id. 206; *Hooker v. Axford,* 33 Id. 453; Perry, Tr. §§ 127, 169.

2. It clearly appears that the lot was bought in to collect a debt, and not for partnership use or purposes; hence there is a resulting trust in favor of the partners of the purchaser, without regard to the state of the partnership accounts; citing *Coder v. Huling,* 27 Penn. St. 84; Story, Part. § 93, and cases cited in note; *Whaling Co. v. Borden,* 10 Cush. 458.

*J. B. Humphrey,* of counsel, for complainant.

*Ball & Hanscom,* for defendant, contended:

1. The evidence does not show any trust resulting in favor of the defendant's partners, which is claimed to arise by reason of his fraud. If the transaction can be accounted for consistently with honesty of purpose on the part of the defendant, no fraud should be imputed to him; citing *Pierce v. Pierce,* 55 Mich. 637; *Campau v. Lafferty,* 50 Id. 114, 117.

2. Complainant can obtain no relief in a suit of this kind until after the partnership affairs are settled, and it is ascertained that all of the debts can be paid, and the accounts of the copartners adjusted among themselves, without disposing of this land; citing *Moran v. Palmer,* 13 Mich. 377; *Buchan v. Sumner,* 2 Barb. Ch. 165 (47 Am. Dec. 305); *Arnold v. Wainwright,* 6 Minn. 358; *Erwin's Appeal,* 39 Penn. St. 535; *Roberts v. McCarty,* 9 Ind. 16; *Hutchinson v. Dubois,* 45 Mich. 143; *Sirrine v. Briggs,* 31 Id. 443; *Dupuy v. Leavenworth,* 17 Cal. 267, 268; *Miller v. Brigham,* 50 Id. 615; *Simpson v. Leech,* 86 Ill. 286; *Bopp v. Fox,* 63 Id. 540.

MORSE, J. The bill in this cause was filed to obtain the title to the undivided two-thirds of a lot of land in the village of Red Jacket. The undisputed facts as to

the purchase of this lot by the defendant, who holds the legal title, are these:

In 1884, the defendant, his brother John Foley, and Michael Smith, a brother-in-law to the Foleys, were copartners in business under the firm name of Foley Bros. & Co. Susan G. McDonald owed the firm a debt of over $1,500. A judgment was obtained against her, execution levied on this lot, and the same sold and bid in, in the name of the defendant, for the sum of $1,000. No money was paid upon the sale, but the $1,000 was applied on the judgment as part payment. This sale ripened into a sheriff's deed of the land to defendant, February 24, 1886.

The bill claims that the lot was bid in by the defendant, and the deed taken in his name, without the knowledge or consent of John Foley and Michael Smith, and with an intention on the part of defendant to cheat and defraud them; that the copartners Smith and John Foley were kept in ignorance of the true state of the title until after the dissolution of the copartnership. It is contended that the purchase of said premises, under the circumstances, gave the said John Foley and Michael Smith an equitable estate therein of one undivided one-third each, and that the defendant holds the legal title of such interest in trust for the complainant, who is grantee of said John Foley and Michael Smith, by virtue of a deed bearing date July 26, 1887, for which he gave a valuable consideration.

The defendant claims that he virtually bought this land with his own money, and the whole of the same is equitably his. He says that in October, 1880, he received $1,400 from the sale of lands that belonged to him individually; that this sum he deposited to the credit of the firm, and it was used for their benefit; that such sum was never drawn out of the firm by him, except that,

when the sale was made of this lot upon the execution, he decided to purchase it for himself, and, instead of drawing out his money from the firm's funds for that purpose, he used so much of the judgment against Mrs. McDonald as was necessary for that purpose, $1,000, because it would be less injurious to the business of the firm to get his pay in that way, instead of taking out his money; that the transaction was entirely in accordance with the practice of all the partners in carrying on their business.

He denies that there was any understanding that the lot in question was to be bid in for the benefit of the firm, or that the other copartners had or are entitled to any interest, legal or equitable, in said lot. He denies that there was ever any dissolution of the copartnership, except as they ceased to do business, or that any settlement or adjustment has ever been had between the copartners concerning the partnership business, or that he is indebted to the copartnership as charged in complainant's bill; but alleges that, on a settlement, the firm would be found indebted to him in a large amount.

The proofs were taken by stipulation before a circuit court commissioner and by interrogatories, and upon hearing and argument the circuit judge, Hon. William D. Williams, decreed that the complainant was entitled to have conveyed to him the undivided two-thirds of the lot, and directed the defendant to convey such interest to him, subject to the rights of said defendant, Martin Foley, in the same, as partnership property of Foley Bros. & Co., on final settlement between the partners composing such firm, "should an accounting be had hereafter." From this decree the defendant appeals.

We are satisfied that the defendant's version of the transaction is correct. The undisputed testimony shows that in 1860, and before that, the defendant and his two

brothers, John and Michael Foley, were engaged in the saloon business at Eagle Harbor, and also at Houghton. In 1861 the firm engaged in butchering at Eagle Harbor, and gave Michael Smith a quarter interest in the same. Soon afterwards the firm of Foley Bros. & Co. was organized, consisting of the three Foley brothers and Smith. The firm engaged in a general mercantile business in Eagle Harbor in 1862, in 1867 at Houghton, and afterwards at Red Jacket and Duluth, building stores at some of the places. In 1875 the store at Houghton burned down, and business ceased at that place. In 1876, Michael Foley died. No change was made in the business after his death, and his widow seems to have been supported out of it, or partially so, until the firm ceased to do business. When the firm of Foley Bros. & Co. was created, all the copartners were married, and had families, except defendant. He was married in 1872. The firm became embarrassed in 1884, and the Red Jacket store was closed out under chattel mortgages. The whole business was discontinued in 1885; John Foley and Michael Smith selling out the Eagle Harbor store and stock to their sons, who went into business under the firm name of Foley & Smith. Foley & Smith assumed part of the indebtedness of the old firm, and all the claims against Foley Bros. & Co. have been paid or settled, except, perhaps, a few small debts. There never was any settlement or accounting between any of the members of the old firm; and from the commencement of the saloon business up to the discontinuance of the mercantile business, in 1885, each partner drew out of the firm, without reserve, whatever goods or money he wanted for living expenses or anything else, and there was no account kept of it. Money was drawn out by all the partners in small amounts, at different times, and invested in land and other property on individual account.

It is clear that the defendant deposited his own money, as he claims, in the name of the firm; and it is equally clear that he took the title to this land without serious objection on the part of John Foley and Michael Smith, and that they never intended, until complainant interfered, to contest such title with him, or claim any interest in the land. John Foley testifies that he knew the lot had been bid in by defendant, but not until after the sheriff's deed had been issued. He learned of the levy of the execution before that time. He says:

"No objection was raised by me, for the reason that I did not know of the fact until long after our business relations had ceased. I have never asked him to convey a part of said lot to me."

Smith testifies substantially the same. Both of them also swear that, during all the time of the copartnership, down to the last moment of its existence, each copartner drew money and goods from the business for his own living and his own purposes, from time to time, as he needed, and no account was kept of such money, goods, and other things drawn out of the several stores by the several partners for their living or for their private purposes.

It was claimed by defendant that, under this common and brotherly using of the property of the firm when needed or desired, for the benefit of each individual member, without any account or reckoning kept between them, the others drew out a great deal more than he did, as he was for a long time a single man, with less wants and necessities than those who were married, and had families to support; and that, if an accounting could be had, it would show the firm largely indebted to him for this reason. In this regard Smith and John Foley testify that in their judgment defendant drew out more than they did, but that they have no accounts by which they

can show whether he did or not. As all of the members of the firm of Foley Bros. & Co. swear that they never attempted to keep accurate accounts between themselves, and as it is evident that a just accounting could not now be had between them of nearly 25 years of business, a business carried on, as between themselves, with no written accounts, and the evidence of their dealings therefor resting in parol, we think the safest and most equitable course is to leave the copartners of this firm as they left themselves at the practical dissolution of the firm, in 1885. Each one seems to have kept what he had drawn out without question or protest from the others.

John Foley and Smith testify that they never made any claim upon defendant for any share in this land. Their excuse is that when they found out he had taken the title in his own name it was to late to do so. They knew of it when the deed was issued, February 24, 1886. They did not deed their interest to complainant until July 26, 1887, nearly a year and a half afterwards. If, during this time, they considered that the defendant, Martin Foley, had committed a fraud upon them in thus taking the title in himself, it seems strange that they did not in some way make known to him that they claimed or thought they ought to have some interest in this land. The defendant testifies that he told Smith about it, and that he made no objection. The defendant's theory is the most consistent with the actions of the parties, as their acts appear from the undisputed facts, and the decree of the court below will therefore be reversed and set aside.

A decree will be entered here dismissing the bill of complaint, with costs of both courts to defendant.

CHAMPLIN, C. J., LONG and CAHILL, JJ., concurred. GRANT, J., did not sit.