EDWIN BLUM, on Behalf of Himself and Other Stockholders of THE DISTILLING COMPANY OF AMERICA, Appellant, *v.* HARRY PAYNE WHITNEY, as Executor of WILLIAM C. WHITNEY, Deceased, et al., Respondents.

CORPORATIONS — ACTION IN BEHALF OF CORPORATION, BY STOCKHOLDER THEREOF, TO RECOVER ALLEGED UNLAWFUL SECRET PROFITS FROM ORGANIZERS OF THE CORPORATION — DEMURRER — WHEN SUCH ACTION CANNOT BE MAINTAINED. Where a corporation, promoted by persons representing several of the officers and directors of one or more of four manufacturing corporations, was organized for the purpose of acquiring the capital stock, or at least a majority thereof, of such four corporations, known as the constituent companies, and the capital stock, or properties, of several other companies in the same business; the capital

stock of the new or holding corporation to be equal, in the aggregate, to the amount of the par value of the stock of the four constituent companies, an additional amount in cash for a working capital, and a certain amount of treasury stock to be held for future purposes; the stock of the constituent companies, or a majority thereof, to be taken up in exchange for stock of the new or holding corporation; the stockholders of the constituent companies, and the officers and directors thereof, whom the promoters represented, being the organizers of the new or holding corporation, and the first stockholders thereof: a stockholder of the holding corporation cannot maintain, in behalf of that corporation, an action against the officers and directors of the constituent companies, against the promoters who represented them in the promotion and organization of the holding corporation, and against the latter corporation, to recover alleged unlawful and secret profits retained by the individual defendants in certain transactions relating to the acquisition and purchase of the constituent and other companies taken over by the holding corporation to the damage of the latter, the latter company being made a party defendant because it refused to bring the action; since the stockholders of the constituent companies and the individual defendants were the organizers of the corporation and became its first stockholders; they dealt wholly between themselves as sellers and buyers, organizers and corporation; no other persons had any interest in this initial transaction; and even if fraud had been practiced by any one of the organizers upon those associated with him, the cause of action would have vested in the party injured, and not in the holding corporation; therefore, a demurrer to the complaint, upon the ground that it fails to state facts sufficient to constitute a cause of action, should be sustained.

*Blum* v. *Whitney*, 111 App. Div. 922, affirmed.

(Argued April 19, 1906; decided May 15, 1906.)

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 23, 1906, which affirmed an interlocutory judgment of Special Term sustaining demurrers to the complaint.

The following question was certified, "Does the third amended complaint state facts sufficient to constitute a cause of action?" The nature of the action and the facts, so far as material, are stated in the opinion.

*William M. Bennett* and *Victor K. McElheny, Jr.*, for appellant. The right of action is primarily in the corporation. (2 Thomp. on Corp. 1613, § 2152; *Sleyden* v. *Seip*

*Coal Co.*, 25 Mo. App. 439; *Dykman* v. *Keeney*, 10 App. Div. 610, 618; *Cooper* v. *Hill*, 94 Fed. Rep. 582; *Pronik* v. *Spirits Distributing Co.*, 58 N. J. Eq. 97; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 179; *Roberts* v. *Roberts-Wicks Co.*, 184 N. Y. 257; *Bloxam* v. *Met. Ry. Co.*, L. R. [3 Ch. App.] 337, 351; *Matter of Exchange Banking Co.* [*Flitcroft's Case*], L. R. [21 Ch. Div.] 519; *Pittsburg* v. *County Allegheny*, 63 Penn. St. 126; *Ernst* v. *R. & B. S. G. Co.*, 38 App. Div. 388.) Where the corporation has a cause of action, and after demand refuses to sue, a stockholder may sue to enforce the right of the company, making the company a party defendant. (*Kavanaugh* v. *C. Trust Co.*, 181 N. Y. 121; *Hutchinson* v. *S. & A. M. Co.*, 85 App. Div. 424; *Hutchinson* v. *C. & A. M. Co.*, 45 Misc. Rep. 484; *Appleton* v. *S. & A. M. Co.*, 65 N. J. Eq. 375; *Brinckerhoff* v. *Bostwick*, 88 N. Y. 52; *Flynn* v. *B. City R. R. Co.*, 158 N. Y. 493; *Jacobson* v. *B. L. Co.*, 184 N. Y. 152; *Sage* v. *Culver*, 147 N. Y. 241.) It is immaterial when the plaintiff became a stockholder. (*Young* v. *Drake*, 8 Hun, 61; *Frothingham* v. *B. & S. A. R. R. Co.*, 9 Civ. Pro. Rep. 304; *Ramsey* v. *Gould*, 57 Barb. 398; *Elkins* v. *C. & A. R. R. Co.*, 36 N. J. Eq. 5; *Parsons* v. *Joseph*, 92 Ala. 403; *Kent* v. *Q. M. Co.*, 78 N. Y. 159; *Field* v. *Pierce*, 102 Mass. 261; *Fitchett* v. *Murphy*, 46 App. Div. 181; *Hanna* v. *P. Nat. Bank*, 76 App. Div. 224.) The plaintiff is not estopped by reason of being a transferee of stock once held by the " organizers." (*McClure* v. *Law*, 161 N. Y. 71; *Pidcock* v. *Swift*, 51 N. J. Eq. 405; *Whitlock* v. *McCluskey*, 91 Ill. 582; *Barr* v. *N. Y., L. E. & W. R. R. Co.*, 125 N. Y. 263; *Hutchinson* v. *Simpson*, 92 App. Div. 382; *Y. S. Co.* v. *Wilcox*, 64 Conn. 101; *Viele* v. *Judson*, 82 N. Y. 32; *Collier* v. *Miller*, 137 N. Y. 332; *H. S. M. Co.* v. *Ryan*, 42 Minn. 196; *Gluckstein* v. *Barnes*, L. R. [App. Cas. 1900] 240.)

*Delancey Nicoll* and *Courtland V. Anable* for Harry Payne Whitney, as executor, et al., respondents. The plain-

tiff has no interest in the matters complained of and is without standing to maintain an action therefor on behalf of the Distilling Company. (*Hawes* v. *Oakland*, 104 U. S. 450; *Dimpfel* v. *O. & M. R. Co.*, 110 U. S. 209; *Wood* v. *C. W. W. Co.*, 44 Fed. Rep. 146; *II. F. Ins. Co.* v. *Barber*, 60 L. R. A. 927; *Belden* v. *Burke*, 147 N. Y. 542; *Kingman* v. *R., W. & O. R. R. Co.*, 30 Hun, 73; *Jenkins* v. *A. C. Ry. Co.*, 27 App. Div. 553; *Ffooks* v. *S. Ry. Co.*, 1 Sm. & G. 142; *Wood* v. *C. W. Co.*, 44 Fed. Rep. 146; *Venner* v. *A., T. & S. F. R. R. Co.*, 28 Fed. Rep. 581.) The agreement between the defendants and the stockholders of the constituent companies was a mere option agreement for purchase of stocks to be paid for by the defendants in the shares of a new company and gave rise to no fiduciary relation. (*L., etc., Co.* v. *Bird*, L. R. [33 Ch. Div.] 85; *Hutchinson* v. *Simpson*, 92 App. Div. 398; *Tompkins* v. *S., J. & Co.*, 96 Md. 560; *Seymour* v. *S. F. C. Assn.*, 144 N. Y. 333; *Barr* v. *N. Y., L. E. & W. R. Co.*, 125 N. Y. 263; *Parsons* v. *Hayes*, 14 Abb. [N. C.] 419; *Miller* v. *U. M. Co.*, 10 Misc. Rep. 311; Morawetz on Corp. [2d ed.] § 290; *Foster* v. *Seymour*, 23 Fed. Rep. 65; *McCracken* v. *Robinson*, 57 Fed. Rep. 375; *O. D. C. M. Co.* v. *Lewishon*, 136 Fed. Rep. 915.) The right to maintain an action for a breach of any fiduciary relation resulting from the option agreement between the defendants and the stockholders of the constituent companies resides in those stockholders as individuals and not in the Distilling Company. (*Brewster* v. *Hatch*, 122 N. Y. 349; *Getty* v. *Devlin*, 54 N. Y. 403; *C. I. Co.* v. *Richter*, 26 Misc. Rep. 26; *Foster* v. *Seymour*, 23 Fed. Rep. 65; *Spaulding* v. *N. M. T. Co.*, 106 Wis. 481.)

*John R. Dos Passos* and *Edmund F. Harding* for Samuel M. Rice et al., respondents. The Distilling Company of America was neither a party nor a privy to the transactions set forth, and consequently no suit can be based upon a fraud or injury to it, either by the corporation or a stockholder in its behalf. (*Thornton* v. *W. Ry. Co.*, 81 N. Y. 467, *L. O.*

*R. R. Co.* v. *Curtis*, 80 N. Y. 222; *W. M. V. Co.* v. *Brady*, 181 N. Y. 152; *Prevost* v. *Gratz*, 6 Wheat. 481; *Brownson* v. *Wiman*, 10 Barb. 406; *Treat* v. *White*, 181 U. S. 268; *Nicol* v. *Ames*, 173 U. S. 516; *Trimble* v. *A. S. R. Co.*, 61 N. J. Eq. 345.) There was no relation of trust between the organizers and the new corporation. (*Prevost* v. *Gratz*, 6 Wheat. 481; *Langdon* v. *Fogg*, 18 Fed. Rep. 8.) The American Distilling Company has no cause of action against defendants arising out of the transactions set forth in the complaint. (*Seymour* v. *S. F. C. Assn.*, 144 N. Y. 340; *Salomon* v. *Salomon & Co.*, L. R. [App. Cases, 1897] 22; *Parsons* v. *Hayes*, 14 Abb. [N. C.] 419; *Langdon* v. *Fogg*, 18 Fed. Rep. 5; *Matter of Gold Co.*, L. R. [11 Ch. Div.] 401; *Matter of British Seamless Box Co.*, L. R. [17 Ch. Div.] 467; *Foster* v. *Seymour*, 23 Fed. Rep. 65; *U. P. R. R. Co.* v. *Credit Mobilier*, 135 Mass. 367; *Scovill* v. *Thayer*, 105 U. S. 143; *Miller* v. *U. Mag. Co.*, 30 N. Y. Supp. 969; *Hutchinson* v. *Simpson*, 92 App. Div. 382; *Tompkins* v. *Sperry*, 96 Md. 560.) The plaintiff was bound affirmatively to show that neither he, nor his assignor, or the person from whom he derived title, was a party to the original transaction, which he seeks to overturn. (*T. L. O. Co.* v. *Marbury*, 91 U. S. 587; *Sage* v. *Culver*, 147 N. Y. 241; *Zebley* v. *F. L. & T. Co.*, 139 N. Y. 461; *Whittemore* v. *Bank*, 26 Fed. Rep. 819; *Dannemeyer* v. *Coleman*, 8 Saw. 51; *Taylor* v. *Holmes*, 127 U. S. 489; *Barr* v. *N. Y. & C. R. R. Co.*, 125 N. Y. 263; *Brown* v. *Duluth*, 53 Fed. Rep. 889; *Wood* v. *Coory*, 44 Fed. Rep. 146; *Symms* v. *Common. Trust Co.*, 60 Fed. Rep. 830; *Belden* v. *Burke*, 147 N. Y. 542.)

Edward T. Bartlett, J.   The plaintiff alleges in his third amended complaint that he is a stockholder of the Distilling Company of America, hereafter called the corporation, and brings this action as such, against the individual defendants and the Distilling Company of America, for the reason that the said corporation has refused and neglected and still

refuses and neglects to do so.   The plaintiff, so acting on behalf of the corporation, seeks to recover alleged unlawful secret profits retained by the individual defendants in certain transactions, set forth in detail, to the damage of the corporation.

It appears that in the month of June, 1899, there existed four corporations, to wit, the American Spirits Manufacturing Company, a corporation incorporated in August, 1895, under the laws of the state of New York; the Standard Distilling and Distributing Company, incorporated in June, 1898, under the laws of the state of New Jersey; the Kentucky Distilleries and Warehouse Company, incorporated in February, 1899, under the laws of the state of New Jersey, and the Spirits Distributing Company, incorporated in January, 1896, under the laws of the state of New Jersey.   The aggregate capital stock, common and preferred, of these four companies amounted in par value to $94,500,000.   These companies will be hereinafter referred to as the constituent companies.

On or about June 20th, 1899, the secretaries of the respective constituent companies sent out to their stockholders a notice, known as Exhibit " B," naming at the head thereof the constituent companies, notifying them that an agreement had been lodged with the State Trust Company contemplating the formation of the Distilling Company of America, with an authorized capital stock of $55,000,000, seven per cent cumulative preferred, and $70,000,000 common, which the organizers proposed should be applied towards the purchase of the capital stock of the above-mentioned companies and certain rye distillery properties, and for an additional working capital of $1,500,000, leaving in the treasury of the new company for future purposes $23,750,000 of its preferred stock and $23,750,000 of its common stock.   The notice further sets forth the percentage of the preferred and common stock of the corporation which the constituent companies, respectively, would receive for their stock.   A few other details follow that are immaterial at this time.

Opinion of the Court, per EDWARD T. BARTLETT, J.    [Vol. 185.

The agreement deposited with the State Trust Company, referred to in Exhibit " B," is known as Exhibit " A." It recites that P. Lewis Anderson and Henry D. Macdona, both of the city and state of New York, hereinafter called " organizers," propose to create under the laws of the state of New Jersey, or some other state to be approved by their counsel, a corporation to be known as the Distilling Company of America, the object of which corporation being, among other things, the manufacture, sale, distribution and warehousing of whisky, spirits and alcohol.  It then sets forth the amount of capital of the proposed corporation, the existence of. the four constituent companies, and the aggregate amount of their capital stock as set forth in Exhibit " B."  It then states, in substance, that the organizers contemplate that the corporation shall become the owner of at least a majority of the entire issued capital stock of the said Manufacturing Company, of the said Kentucky Company, and of the said Standard Company, and shall also become the owner of at least a majority of the entire issued preferred stock of the said Distributing Company. Also that the organizers contemplate that the corporation shall become the owner of certain rye properties, or the entire capital stock of a certain other company which may be organized, called the Rye Company, and which company, if created, shall acquire, by purchase or otherwise, certain rye distilling properties, as follows : At least ninety-five per cent of the entire capital stock of the Hannis Distilling Company of Philadelphia and Baltimore ; and the St. Paul Distillery. Also that the organizers further contemplate that the corporation shall be furnished with a cash working capital of at least $1,500,000.  Exhibit " A " also states the amount of preferred and common stock that each of the companies shall receive for its stock.   June 30th, 1899, was designated as the date of the expiration of the time for the deposit of the shares of stock of the constituent companies with the trust company. Exhibits " A " and " B " are made a part of the complaint.

The plaintiff alleges the completion of this contemplated scheme, so far as it was carried out, and the subsequent organi-

zation of the Distilling Company of America. He further alleges that the individual defendants " confederated together in or about the summer of 1899 to make for themselves a secret profit at the expense of the stockholders of the ' Constituent Companies,' and at the expense of the Distilling Company of America, and its stockholders and this plaintiff." Also " that the entire scheme for the formation of said Distilling Company of America herein set forth was not a legitimate business operation intended for the benefit and improvement of the business of said ' Constituent Companies ' to the profit of its stockholders, but was purely a stock jobbing operation conceived and executed in the manner hereinbefore set forth," etc.

Also that in pursuance of the said scheme certain of the individual defendants obtained an option from the stockholders of the Hannis Distilling Company upon about ninety-five per cent of the stock of said corporation; " that the capital stock of the said Hannis Distilling Company was $1,500,000; and the said Whitney and others procured an option thereon to purchase the same for the sum of $1,500,000 in cash and $250,000 in preferred and $250,000 in common stock of the Distilling Company of America, a corporation not then formed, but to be organized as hereinafter set forth; and the said Hannis Distilling Company, and the stock thereof, was not worth more than the said sum of $1,500,000."

It is further alleged in this connection as follows: " The said prospectus " (referring to Exhibit B) " did not state that the said William C. Whitney and the individual defendants hereinafter mentioned had an option on or were interested in the Hannis Distilling Company, or its stock, or the amount that it was contemplated they should be paid for their said interest, or that they intended to make a profit out of the sale to the said Distilling Company of America for their option on the stock of the said Hannis Distilling Company; nor did the said William C. Whitney, or any of the said defendants, at any time, or in any way, state that they were interested in said Hannis Distilling Company or its stock, and intended

to cause the said Distilling Company of America to acquire the same from themselves, but they fraudulently concealed the same from the stockholders of the 'Constituent Companies' and caused the same to be acquired by the Distilling Company of America at the direction of their own agents and representatives as directors as hereinafter set forth."

It thus appears that the parties to the agreement contracted with each other to form a corporation and issue its stock for certain properties and cash definitely set forth in a written agreement. The plaintiff alleges that the carrying out of this scheme was in fraud of the rights of the stockholders of the constituent companies ; also of the stockholders of the Distilling Company of America and himself. It is obvious that plaintiff has no concern with the rights of the stockholders of the constituent companies, who have carried out the agreement, and, so far as this record discloses, have made no complaint.

It remains to consider whether the Distilling Company of America has a cause of action against these individual defendants. This transaction, stripped of details and immaterial figures, is exceedingly simple and governed by well-settled legal principles.

It is alleged that the defendants Anderson and Macdona, the organizers so called, were in fact the representatives of the individual defendants. It must be assumed under the demurrers that such was the fact. These individual defendants, several of whom were officers and directors in one or more of the constituent companies, entered into a written agreement with the stockholders of the said constituent companies to form the Distilling Company of America, with a capitalization and disposition of its stock as already stated.

The plaintiff alleges that ninety-five per cent of the stock of the Hannis Distilling Company was not worth more than the sum of $1,500,000, being the amount paid therefor by the organizers as hereinbefore stated. It is of course entirely immaterial what the organizers paid for the stock of the Hannis Distilling Company — it might have been presented to them — as their part of the agreement was to turn into the

corporation at least ninety-five per cent of said stock, which they did.    The pleading of plaintiff shows that the organizers paid out in cash $3,000,000, half of which went in as working capital of the corporation and the balance was paid to the Hannis Distilling Company for ninety-five per cent of its stock at full value.    The only importance of the amount paid for that stock is to show that the organizers performed their contract to the letter and advanced the entire cash involved in this enterprise of $3,000,000.

The plaintiff further alleges that the stock of the Distilling Company of America sold in July, 1899, in the open market, the preferred at seventy and the common at thirty-five.    We thus have the admission that the carrying out of this agreement resulted in the formation of a corporation whose shares had a very substantial value in open market.    The plaintiff also alleges, in substance, that on June 22nd, 1899, the stocks of the constituent companies were selling at much lower figures on the average.

We have here nothing more than the ordinary transaction of parties coming together and agreeing in writing to form a corporation that shall take over from them certain definitely understood properties and cash, for which is to be issued its entire capital stock.    It is doubtless true that in many instances there is great over capitalization, and that the general public is frequently misled by the large amounts of preferred and common stock issued by corporations.    The rights of the public are not involved in this litigation.

The organizers of the Distilling Company of America have apparently dealt with each other in entire good faith and the contract between them, under which this result was accomplished, has been performed to the satisfaction of all concerned.    The stockholders of the constituent companies and the individual defendants were the organizers of the corporation and became its first stockholders; they dealt wholly between themselves as sellers and buyers, organizers and corporation; no other persons had any interest in this initial transaction; if fraud had been practiced by any one of the

16

organizers upon those associated with him, the cause of action would have vested in the party injured.

The brief submitted by counsel for plaintiff, appellant, deals to a great extent with the law governing promoters, which has no application to the state of facts here presented. There are also many allegations, inferences and conclusions in the third amended complaint which must be disregarded under the rule that a demurrer only admits the facts stated and such inferences as can be fairly drawn from them. (*Greeff* v. *Equitable Life Assurance Society*, 160 N. Y. at page 29, and cases there cited.)

The law governing the situation here presented is discussed in many American and English cases; reference will be made to only a few of them. In *Seymour* v. *Spring Forest C. Association* (144 N. Y. 333) certain persons purchased a parcel of land for the purposes of a rural cemetery, which was deeded to them jointly. They commenced the improvement of the land for the intended use, expending their own means in the work; subsequently the association organized a rural cemetery association, of which they were the only stockholders, and in which they alone were interested. To this corporation they transferred the property, fixing the consideration at $30,000, which was to be paid by the issue of corporate bonds; these, by their terms, were to be paid out of the net receipts from the sale of lots. These bonds were issued and were all, except those held by themselves, bought in by two of the associates, who were directors of the corporation, at less than par. In an action brought by the subsequent holders of said bonds for an accounting, etc., evidence was given that the land conveyed was not worth the sum secured. Judge FINCH, writing for the court, said (p. 340): "While the technical form of this transaction was a sale by the eleven to the corporation, its substance was merely a change in the manner of holding. The sellers were the buyers. They sold as individuals and bought as a corporation, and no one else had any interest in the question of price or terms of sale. If they were the vendors on the one hand, dealing with themselves in a corporate

capacity on the other, they were also the sole beneficiaries to be affected, and could not defraud themselves. The abstraction of the corporate entity should never be allowed to bar out and pervert the real and obvious truth. * * * Evidence was given to show that the land conveyed was not worth the sum secured, but that is a totally immaterial fact. Whatever the price it wronged no one and could wrong no one and accomplished nothing except to fix a primary limit to the anticipated profits. It was immaterial for another reason. The bonds were payable wholly out of the enterprise."

In *Barr* v. *N. Y., L. E. & W. R. R. Co.* (125 N. Y. 263) the same principle was involved. Judge GRAY in referring to it said (p. 273) : " But the stockholders and the members of the syndicate were the same persons, and however wrong the transaction might be if other persons were concerned, here no injury was effected to any one interested in the corporation. And however illegal the transaction, there was no person apparently to complain of it. As the stock was issued as a part of the consideration for construction, it cannot be said that it was taken without value given, and the mode of its apportionment or division concerned only those interested in the contract, through which it was received as payment."

In *Thornton* v. *Wabash Ry. Co.* (81 N. Y. 462) this principle is discussed under a different state of facts. The plaintiff alleged in substance that the railroad and franchises of a certain company, of which he was a stockholder, were sold under foreclosure and bid off by a committee of bondholders ; that a portion of the stockholders disputed the validity of the sale and a litigation arose, which resulted in an agreement under which the stockholders withdrew opposition and were accorded by the purchasers the right to take stock in the new company to be organized, upon terms specified, among others, that the option must be made within thirty days ; in pursuance of this arrangement the Wabash Railway Company was organized ; the plaintiff had no knowledge of the agreement until after the expiration of the thirty days ; he tendered performance and was refused ; the other defendants were the

purchasing committee who were authorized to carry out the agreement. Plaintiff asked damages for the refusal. Demurrer to the complaint was sustained on the ground that if the foreclosure sale was valid all the plaintiff's rights were cut off; if invalid, his right to attack it survived.

Judge Rapallo said (p. 467) : "It is difficult to find any ground upon which this action can be maintained against the company. The agreement under which the plaintiff claims was not made by it or in its behalf, nor was it to be performed by the company. All the stock of the new company was to be issued, in the first instance, to the purchasing committee, who were to hold it in trust for distribution according to the scheme proposed. The old stockholders were to look to the committee for their new stock and not to the new company, and if it misappropriated it the recourse was against them."

In *Tompkins* v. *Sperry, Jones & Co.* (96 Md. 560) the owners of property formed a corporation to which the property was transferred, and these persons were the only shareholders in the company, taking the shares in payment for their property; subsequent purchasers of the shares claimed to have been deceived by false representations as to their value. It was held that a claim for the damages suffered was neither against the corporation itself nor its receiver, but should be prosecuted against the original shareholders. The court said (p. 583): "It is a misuse of terms in the present case to say that Sperry and Jones stood in a fiduciary relation to the company at the time they made the contracts with the brewers, or when they turned property into the company in payment of its stock and bonds. They at that time held all of its stock and were the sole owners of the company. They were in equity the company itself. (*Swift* v. *Smith, Dixon & Co.*, 65 Md. 428.) There was no invitation to others to subscribe to the stock."

In *Foster* v. *Seymour* (23 Fed. Rep. 65) the Circuit Court of the United States for the Southern District of New York held that where the statute under which the company is incorporated authorizes the trustees to issue stock and exchange it

for property declares that when exchanged such stock shall be taken to be full-paid stock and not liable to further calls, and the trustees, being the only members of the corporation, exchanged the whole capital stock in payment for the purchase of mining property owned by themselves, and, after division and distribution of the stock among themselves, sold it as full-paid stock to innocent purchasers, such purchasers cannot maintain a suit to compel the trustees to account to the corporation for a fraudulent disposition of its capital stock.    Judge WALLACE said : " There was no fraud upon the corporation.    At the time the scrip was exchanged for the mining property the trustees were all there was of the corporation.    There were no stockholders unless they were stockholders.    What was done was done by the corporation.    By the exchange the corporation got the mining property, and gave it back again to those from whom it got it, divided into 100,000 shares of the nominal value of $100 each.    (*In Re Ambrose Lake Tin & Copper Min. Co.* [*Ex parte Taylor*], L. R. [14 Ch. Div.] 390 ; *Re Seamless Box Co.*, L. R. [17 Ch. Div.] 467.)    *    *    *    If the original transaction in connection with the special facts of a purchase of stock should operate as a fraud upon a purchaser the cause of action would be his and not that of the corporation.    *    *    *    The remedy of the complainant, if he has been deceived into the purchase of stock by false representations as to value, is against those who have misled him."

In *In Re Ambrose Lake Tin & Copper Mining Co.* (L. R. [14 Ch. Div.], 390) the court held that, although the scheme by which the mine was estimated much beyond its true value might have been intended to deceive the public, there was no fraud upon the company, all the members of which were parties to the arrangement, and that Taylor and Moss were not accountable to the company for any profit they had made or might have made by the transaction.    Lord Justice COTTON said (p. 399), speaking of the original stockholders : " But they are the only members of the company, and they were the only owners of the mine.    Therefore, I cannot see how the company can complain of that act which all the mem-

bers of the company were cognizant of, and which, so far as they could, they approved of and confirmed." To the same effect are *In re British Seamless Paper Co.* (L. R. [17 Ch. Div.] 467); *In re Coal Economizing Gas Co.* (*Gover's Case*) (L. R. [1 Ch. Div.], 182). See, also, *McCracken* v. *Robison* (57 Fed. Rep. 375); *Old Dominion Copper Mining Co.* v. *Lewisohn* (136 Fed. Rep. 915); *King* v. *Barnes* (109 N. Y. 267, 268); *Parsons* v. *Hayes* (14 Abb. [N. C.] 419).

Mr. Morawetz in his work on Private Corporations (2nd ed. vol. 1, § 290), speaking of the original issue of certificates of stock where the stockholders and the organizers of the company are composed of the same individuals, says: " But, under these circumstances, the corporation cannot complain against those who issue the certificates, inasmuch as it has suffered no injury, having consented to the unauthorized act.   *   *   * It follows *a fortiori*, that a shareholder cannot sue on behalf of the corporation. This was the decision in *Parsons* v. *Hayes* (14 Abb. [N. C.] 419), a suit brought by a shareholder in a mining corporation formed under the general law of New York of 1848.   *   *   * In the case referred to, the directors named in the certificate of incorporation issued paid up certificates for the entire capital stock of the company, amounting nominally to two millions of dollars in payment of a mine · which was known to be worth less than one hundred and fifty thousand dollars.   *   *   * The plaintiff claiming to be a *bona fide* purchaser of his shares brought suit in the form of an ordinary shareholder's bill and made the corporation and the directors who had first issued the stock defendants." After pointing out that a demurrer to the complaint was sustained, the learned author further states: " The ground of the decision was that, inasmuch as the acts of the defendants were performed with the consent and at the instance of the holders of the entire capital stock, neither the corporation nor its stockholders suing on its behalf could complain.   *   *   * The absurdity of the plaintiff's claim becomes apparent when it is considered that there was no corporation in existence until the issue of shares which constituted ·the alleged injury to the

corporation had taken place.   *   *   *   The vendor of the property in truth took back what he gave. He placed the property in the corporate name and at the same time practically became the corporation or became its sole stockholder. Evidently, therefore, no person was injured by that transaction."

We are of opinion that the Distilling Company of America was vested with no cause of action against these defendants by reason of the facts set forth in the third amended complaint, and that the question propounded should be answered in the negative.

The order and judgment appealed from should be affirmed, with costs.

CULLEN, Ch. J., GRAY, HAIGHT, WILLARD BARTLETT and CHASE, JJ., concur; VANN, J., dissents on opinion of HATCH, J., in *Hutchinson* v. *Simpson* (92 App. Div. 382).

Order and judgment affirmed.