(60 Misc. Rep. 442.)

SCHLESINGER v. FISK et al.

(Supreme Court, Special Term, New York County. September, 1908.)

1. CORPORATIONS (§ 457*) — STOCKHOLDERS—FRAUD UPON RIGHTS OF CORPORATION.

A sale by a corporation of its plant, contracts, and other assets to another corporation, whereby those who in effect owned the latter corporation and had carried on the transaction secured a considerable profit and advantage, did not constitute a fraud upon the purchasing corporation.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 457.*]

2. CORPORATIONS (§ 190*)—STOCKHOLDERS—FRAUD.

A stockholder in a corporation alleged that defendants owned it, and also controlled another corporation, and that defendants had unloaded their stock therein on the former corporation for an amount greatly in excess of its value, and that, upon the transfer of the plant, contracts, and other assets of a third corporation to such former corporation, defendants had secured a considerable profit. Such transactions necessarily involved the acquiescence of every stockholder of the former corporation, notwithstanding allegations that the plan was "in fraud of the stockholders," and there was no suggestion that the public was defrauded, or that such stockholder was deceived, or that he became a purchaser of his stock believing that defendants were not to receive any profit. Held, that such stockholder had no cause of action either in his own right, or that of the cor-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

poration in which he was a stockholder, based upon any acts of fraud of defendants.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 723; Dec. Dig. § 190.*]

**3. ACTION (§ 45*)—MISJOINDER.**

A cause of action for conversion of the bonds and stocks of a corporation cannot properly be united with a cause of action against the directors for negligence or misconduct.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 410–429; Dec. Dig. § 45.*]

Action by Leo Schlesinger against Pliny Fisk and others. Defendants demurred to the complaint. Demurrers sustained, with leave to amend.

Dittenhoefer, Gerber & James, for plaintiff.
Simpson, Thacher & Bartlett, for defendants.

GREENBAUM, J. Assuming that the bill of complaint sufficiently alleges that upon the transfer of the plant, contracts, and other assets of the Federal Contracting Company to the New Jersey Terminal Dock & Improvement Company, of which the plaintiff is a stockholder to the extent of 150 shares, the defendants Harvey Fisk & Co. secured to themselves a considerable profit and advantage—an assumption that well may be doubted is justified by the allegations—I fail to see how such a transaction would constitute a fraud against the New Jersey Terminal Dock & Improvement Company. It seems to me that it presents a situation entirely analogous to that disclosed in such cases as Blum v. Whitney, 185 N. Y. 232, 77 N. E. 1159, and Old Dominion Copper Mining & Smelting Company v. Lewisohn, decided by the United States Supreme Court, May 18, 1908, and reported in 210 U. S. 206, 28 Sup. Ct. 634, 52 L. Ed. 1025. The complaint in so many words states that Harvey Fisk & Co. "in effect owned the improvement company," and that they controlled and dominated the Meadows Company. The conclusions of the pleader in these respects are fully borne out by the allegations in the complaint.

It appears that the "Improvement Company," as the New Jersey Terminal Dock & Improvement Company for convenience is designated, was capitalized for $3,000,000, and, with the exception of $1,000, the entire capital stock was turned over to Harvey Fisk & Co., through their dummy, Barrett, together with $1,850,000 of its corporate bonds. In view of the affirmative allegations that Harvey Fisk & Co. owned the improvement company, and in the absence of any allegation to the contrary, it may fairly be assumed that the block of stock of $1,000 was set aside in their behalf to their dummies to enable them to qualify as directors. The plan unfolded virtually constituted a sale by promoters to themselves as a corporation. It would be a work of supererogation to discuss the effect of such a transaction, so far as the corporation is concerned, in the light of decisions in the cases above cited that, under existing statutes, it was legally unobjectionable. But independently of the foregoing consideration it is difficult to under-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stand how the facts, as determined by the allegations of the complaint and the exhibits thereto annexed, may be regarded as a fraud upon the improvement company. It appears that the Meadows Company was capitalized for $3,000,000, and mortgaged to the extent of $1,-500,000, and that it owned real estate valued at about $10,000,000. The actual value of the stock of this company, therefore, ostensibly was at least twice its par value, so that the 17,000 shares of this stock owned by Harvey Fisk & Co., and to be transferred to the improvement company, according to plaintiff, would have a value of upwards of $3,400,000, or more than the entire capitalization of the improvement company. The scheme, as disclosed by the complaint, contemplated the organization of the improvement company by turning over $2,999,000 of its stock (its entire issue, saving $1,000) and $1,850,000 of its bonds to Harvey Fisk & Co., who, in their turn, were to deliver thereof to the Federal Contracting Company, in consideration of the transfer of its assets to the improvement company, $1,000,000 of the bonds and $1,000,000 of the stock. Harvey Fisk & Co., who were also to transfer to the improvement company the 17,000 shares of the stock of the Meadows Company, which, as has been pointed out, had an apparent value of $3,400,000, retained for themselves the difference between the amount of bonds and stock received from the improvement company and the amount transferred to the Federal Contracting Company, to wit, $850,000 bonds and $1,999,000 shares of stock. According to the complaint, Harvey Fisk & Co. were enabled by this scheme "to unload their said stock of the Meadows Company on the improvement company for an amount greatly in excess of its value," and to receive as a profit for the 17,000 shares of Meadow stock $425,-000 in bonds and $425,000 in stock of the improvement company. There is nothing to indicate what the value of the Meadow stock was, excepting that it may be estimated from the complaint, as already shown, that it was worth more than double its par value, and the further allegation that Harvey Fisk & Co. were enabled to unload their Meadow stock "for an amount greatly in excess of its value" clearly is a mere conclusion of the pleader, and in apparent contradiction of the specific allegations of the complaint as to the great value of the Meadows Company's properties. But whether or not Harvey Fisk & Co. derived unconscionable profits from the reorganization of the corporations concerned, and we must assume from the complaint and the agreements that the rearrangement of holdings and assets carried with it a considerable profit to Harvey Fisk & Co., it is evident that the reorganization necessarily involved the acquiescence therein of every stockholder of the improvement company, despite the reiterated allegations in the complaint that the plan was "in fraud of the stockholders."

It has been pointed out that the complaint expressly alleges that Harvey Fisk & Co. owned the improvement company, and that substantially its entire capital stock came into their possession, so that the conclusion of the pleader that the plan was "in fraud of stockholders" manifestly can have no reference to the then stockholders, and must be held to refer only to future holders of stock; that is, to those who subsequent to the reorganization became owners thereof. But there is

not the slightest suggestion that the innocent public was deceived or defrauded, or that the plaintiff was deceived by the acts described in the complaint, or that he became a purchaser of said stock in reliance of a state of facts which eliminated the element of any profit to the defendants Harvey Fisk & Co. It seems clear from the authorities above cited that plaintiff has failed to set forth a cause of action, either in his own right or that of the Improvement Company, based upon any acts of fraud on the part of the directors and Harvey Fisk & Co. In so far as plaintiff attempts to allege a cause of action against the directors of the improvement company for permitting defaults in the payment of interest on mortgages for the purpose of wrecking the company, it is sufficient to say that there is an absolute dearth of facts from which any case against defendants may be inferred, and, indeed, plaintiff has not even attempted upon these allegations to advance any argument in support of the complaint. People of the State of N. Y. v. Equit. Assur. Soc., 124 App. Div. 714, 109 N. Y. Supp. 453. I am also of opinion that if any causes of action have been alleged they are improperly united in the complaint.

As against the members of the firm of Harvey Fisk & Co., the plaintiff claims conversion of the bonds and stocks of the improvement company, the value of which he seeks to recover from them and against the directors of said company a recovery must rest upon alleged acts of neglect or misconduct. These causes cannot properly be united. People, etc., v. Equit. Life Assur. Soc., supra. The several demurrers to the complaint are sustained, with costs to the defendants, and with leave to plaintiff to amend his complaint upon the payment of costs.

Demurrers sustained, with leave to amend.