AMERICAN FORGING & SOCKET CO. *v.* WILEY.

1. CORPORATIONS—PROMOTERS—FIDUCIARY RELATIONS—ACQUISITION OF STOCK—EQUITY—JURISDICTION—RESTITUTION.

   Where defendant, a stockholder and promoter of plaintiff corporation, stood in a fiduciary relation to said corporation and its other stockholders, and received stock to be used for the benefit of plaintiff, for which he refuses to account, a court of equity has jurisdiction to compel restitution.

2. EQUITY—REMEDY.

   In equity, that kind of relief will be granted which is best adapted to the situation at the time it is applied for.

3. CORPORATIONS—FIDUCIARY RELATIONS—DEFENSES.

   Where defendant received stock of plaintiff corporation to be used for its benefit, he is in no position to deny the legality of the organization of plaintiff, or the validity of the contract whereby he received said stock.

4. SAME—PARTIES.

   Since whatever would be an injury to the shareholders would be an injury to their collective or corporate interests, the company is the proper plaintiff to enforce such rights.

5. SAME—MODIFICATION OF DECREE.

   Where defendant received 100 shares, and the evidence supports the conclusion that his services exceeded the value of 20 shares, the decree of the court below requiring him to surrender for cancellation 80 shares will be modified to 60 shares and affirmed.

Appeal from Oakland; Smith, J. Submitted April 16, 1919. (Docket No. 56.) Decided July 17, 1919.

Bill by the American Forging & Socket Company against Harry W. Wiley and others for the cancellation of certain shares of stock. From a decree for plaintiff, defendants appeal. Modified, and affirmed.

*Perry & Lynch* and *Arthur P. Hicks,* for plaintiff.

*Alex. Moore,* for defendant Wiley.

Authorities discussing the subject of liability of promoters of corporation for secret profits, are collated in a note in 18 L. R. A. (N. S.) 1110.

STONE, J.   The bill of complaint in this case was filed against Harry W. Wiley, Emma McCourt, George W. Dickinson and Charles E. Duffy for the purpose of canceling 100 shares of stock in the plaintiff company, originally issued on the order and direction of said defendant Wiley to himself and to his sister, Emma McCourt, 20 shares of which were subsequently issued to George W. Dickinson, and 10 shares to defendant Charles E. Duffy.   The bill alleged that defendant Wiley claimed, prior to the execution of the articles of incorporation, that he was the owner of certain patents which were then under consideration at the patent office at Washington, which were valuable and useful for the manufacture of articles which said corporation desired to manufacture and sell; that he was acquainted with various people of financial ability whom he could induce, and would induce, to take stock in the proposed corporation, and thereby furnish said corporation with a means to proceed with its business of manufacturing, and that he proposed, in the event of said corporation being formed, to finance said business and secure valuable financial assistance therefor.

It alleged that the original incorporators of said corporation were defendant Wiley, Warren W. Stoler, Edward Stoler, Edgar A. Rathbun and Evan P. Heaton; that said incorporators, at the suggestion of defendant Wiley, employed an attorney to draw up articles of incorporation; that none of the said individuals were trained in the law, or had knowledge of the provisions of the statutes of Michigan relative to incorporation, and relied entirely upon the advice of said attorney in the drawing of said articles; that the said attorney advised the said incorporators that under the laws of the State of Michigan it would be necessary to have all of the capital stock subscribed for, and all issued; that said incorporators—at least

said incorporators excepting the defendant Wiley—did not expect that it would be necessary that all the stock should be issued; that they were desirous of having stock in the treasury to sell for the purpose of securing money to finance said corporation; but that after they had been informed by said attorney that it was necessary that all the stock should be subscribed for and issued, it was then and there agreed by all the incorporators that each of said incorporators would cancel or turn into the treasury, one-half of all the stock issued to them respectively; that the other half of the capital stock so issued to each individual was to be, by said individuals, sold and the proceeds thereof used for the benefit of said corporation as capital; that the said defendant Wiley, under said agreement, agreed to cancel one-half of the said 200 shares of stock so issued to him, and to proceed diligently to sell the same and interest capitalists in the said venture, and induce them to purchase stock therein to enable the corporation to secure capital to carry on its work; that out of the 100 shares so retained by said defendant Wiley he should retain a sufficient amount of stock to repay him for the value of the said patents, for the work he would do in promoting the interests of said corporation and securing the investment of capital therein, and the balance of said stock should be accounted for to said corporation at its par value.

The bill alleged that, subsequently, at a meeting duly held by all of the stockholders, each of the said stockholders, excepting the said defendant Wiley, voluntarily canceled one-half of the stock so issued to each of them, turning the same back into the treasury to be used as treasury stock for the purpose of securing capital for said corporation, and that said defendant Wiley objected and refused at first to turn any portion of his said stock in, as he had agreed, but finally

he did turn into the treasury of said company 100 shares of the stock so issued to him; that at the time the 200 shares were originally issued to said defendant Wiley he requested that 160 shares thereof be issued in the name of his sister, Emma McCourt; and that said 200 shares of stock were issued in three blocks, one of 120 shares in the name of Emma McCourt, as aforesaid, and one of 40 shares also in her name, and one of 40 shares in the name of said defendant Wiley; that when the said defendant Wiley consented to return 100 shares of said stock he produced the certificate of 120 shares issued to his said sister, and also had in his possession the 40 shares issued in her name, both of which certificates were indorsed by the said Emma McCourt; that the said certificate of 120 shares of stock in the name of Emma McCourt was surrendered to the plaintiff corporation and a certificate for 20 shares, at the request of said defendant Wiley, was issued in the name of defendant Dickinson. The bill further alleged that, as matter of fact, the said defendant Wiley was not the owner of, nor did he have any claim of title whatever to the patents heretofore referred to and described in the articles of incorporation, and that he has not, at any time since, become possessed of title thereto; that the said defendant Wiley, after the said incorporation, did not succeed in selling any stock to any person; did not interest any capital in the business of said corporation, and did nothing whatsoever to in any manner or in any degree assist said corporation in any of its affairs, and that he has not performed any of the things agreed by him to be done, and has not sold any of the 100 shares of stock obtained by him out of the said original subscription, but now claims to own the same. The bill alleged that the stock issued to said defendant Dickinson was issued to him without his knowledge, and that he is not a *bona fide*

holder thereof. It is further alleged that said defendant Wiley, having absolutely failed, refused and neglected to carry out the terms of the trust under which said shares of stock were issued to him, the plaintiff caused notice to be published in a newspaper published in the city of Detroit, that the shares of stock so held by said defendant Wiley were held by him without consideration, and that no money or property whatsoever had been paid at any time therefor, and that the said company would not recognize any transfer thereof; that subsequent to said notice defendant Duffy presented to the plaintiff, through its secretary, the certificate of stock for 40 shares originally issued to the said defendant Wiley, upon which certificate was an indorsement of transfer to said defendant Duffy of 10 shares thereof.

The bill charges that the defendant Duffy had knowledge of the facts connected with the issuing of said stock, and of the terms and conditions under which said defendant Wiley held said stock, and the fact that this plaintiff claimed and insisted that said Wiley had no legal title thereto, and that said defendant was so informed at the time he presented said stock and asked that two certificates be issued in lieu of said 40 shares of stock, one in the name of said Duffy for 10 shares, and one in the name of said defendant Wiley for 30 shares, which request this plaintiff refused, and did not consent to the transfer, and did not issue any stock in lieu thereof; and the plaintiff claims that said Duffy paid no value for said shares of stock and was not a *bona fide* holder thereof.

The bill further alleged that defendant Wiley is not entitled to any of the shares of said stock; that he has not fulfilled the terms and conditions under which the same were delivered to him, nor discharged the trust imposed in him at the time, and that he is not legally entitled to hold and control any of said stock,

and that said defendants McCourt, Dickinson and
Duffy are not *bona fide* holders for value, nor holders
without notice, and are not, nor is any of them, en-
titled to insist upon the ownership of said stock as
against the plaintiff; that this plaintiff is apprehen-
sive that the said defendant Wiley will sell and dis-
pose of the said stock to parties who may be pur-
chasers for value, and the rights of this plaintiff there-
by jeopardized and injured, and that by reason of the
premises the said defendant Wiley should not be per-
mitted to sell and transfer any of the said shares of
stock.

The bill further alleged that defendant Wiley is a
man of no financial responsibility, and that a judg-
ment against him for the value of the stock would be
of little or no value, and that since the incorporation
of said company certain of the stockholders of said
company have been successful in selling stock, and
interesting capital in its venture, and that the plaintiff
at the present time is in a fairly prosperous condition,
and engaged in the manufacture and selling of sockets
and forgings of different kinds, and as a consequence
the stock of said company is worth many thousands of
dollars; that said stock in question, as matter of law
and right, belongs to this plaintiff; that said defend-
ant Wiley should be held to account to said plaintiff
for said stock, he being given credit for any and all
moneys he has expended, and for any and all work
that he did for the benefit of such corporation, and
the balance of the stock returned by him to the plain-
tiff.

The articles of incorporation were executed on the
28th day of May, 1915. They appear to be in due
form. The purpose or purposes of the corporation
are therein described as follows:

"To manufacture and sell, both at wholesale and re-
tail, forgings, sockets, and automobile parts of all

kinds, and to purchase, own and operate a factory for the manufacture of forgings, sockets, and automobile parts of all kinds."

The principal place of business is stated to be the city of Pontiac, Oakland county, Michigan. The capital stock was the sum of $100,000; the number of shares 1,000 of the par value of $100 each. All of this stock was in form subscribed, and the names of the stockholders and the number of shares of stock subscribed for by each were as follows:

Harry W. Wiley .........................200 shares
Warren W. Stoler ....'.................200    "
Edward Stoler ...........................200    "
Edgar A. Rathbun .......................200    "
Evan P. Heaton ..........................200    "

—all of which it was alleged was actually paid in, of which amount $5,000 was said to have been paid in cash, and $95,000 in property described as follows:

One patent, serial No. 29,402, issued to Warren W. Stoler by the United States, May 20, 1915, on a bow socket locking machine, and duly assigned to this plaintiff, which patent was of the value of $50,-000; also one patent, serial No. 634,106, issued to Edward Stoler by the United States, July 2, 1914, on an automobile top socket, and duly assigned to the plaintiff, the value of which was stated as $45,000.

The affidavit required by the statute was signed and sworn to by Warren W. Stoler, Edgar A. Rathbun and Edward Stoler.

The defendant Wiley answered denying generally the allegations of the bill of complaint, and especially that he ever agreed to account to the plaintiff in any way for the 100 shares of stock here involved, claiming to own the same, with the exception of 20 shares conveyed to the defendant Dickinson. Defendant Emma McCourt disclaimed all interest in the stock, and defendant Duffy admitted on the record that his stock

must stand or fall with the stock standing in the name of defendant Wiley.

It appears undisputed from the evidence that the Edward Stoler patent was never issued and never received by the company. The $5,000 said to be paid in cash was not paid in as stated in the articles, but, at the most, about one-half thereof was expended by two incorporators, Heaton and Rathbun, in building the machine covered by the Warren W. Stoler patent.

The court below found that the certificates for 80 shares of stock remaining in the name of defendant Wiley were issued and delivered without any adequate consideration therefor, and that the material allegations in the bill of complaint in relation to said certificates were true, and that defendant Wiley had not paid for said certificates of stock. It ordered and directed that the said defendant deliver up to the plaintiff the said certificates, and that they be decreed in his hands to be null and void; and that in case he refused to deliver up said certificates, the decree should operate as a cancellation thereof. It dismissed the bill of complaint as to defendant George W. Dickinson. It restrained all the defendants from assigning, selling, transferring, disposing of, or incumbering in any way the certificates for the said 80 shares of stock, and awarded costs against defendant Wiley; and decreed that as to defendant Charles E. Duffy, his rights should abide the decree in relation to the stock standing in the name of defendant Wiley.

While all the defendants appear to have claimed an appeal, the defendant Wiley, only, has filed a brief in this court. It is the claim of the appellant Wiley that the plaintiff has no standing in a court of equity, for the purpose of obtaining the relief prayed for in the bill of complaint; that the rights of the public or creditors are not involved, and that the original stockholders dealt wholly with themselves as sellers and

buyers, and a corporation, and that no other person had any interest in this initial transaction, and that there was no effort or opportunity to defraud any one, and cites in support of this contention: *Blum* v. *Whitney,* 185 N. Y. 232 (77 N. E. 1159) ; 3 Cook on Corporations (7th Ed.), p. 2042; *Old Dominion Copper Co.* v. *Lewisohn,* 210 U. S. 206 (28 Sup. Ct. 634) ; *Great Western Mining Co.* v. *Harris,* 198 U. S. 561 (25 Sup. Ct. 770).

It is the claim of the plaintiff that a court of equity has jurisdiction to grant the relief prayed for in the bill of complaint, and it cites in support of that position: *Old Dominion Copper Co.* v. *Bigelow,* 203 Mass. 159 (40 L. R. A. [N. S.] 314, 89 N. E. 193) ; *Fred Macey Co.* v. *Macey,* 143 Mich. 138 (5 L. R. A. [N. S.] 1036) ; *Cuba Colony Co.* v. *Kirby,* 149 Mich. 453, and other Michigan cases.

It is also the claim of plaintiff that *Old Dominion Copper Co.* v. *Lewisohn, supra,* was not followed in the Massachusetts case, which latter case is in accord with our decisions. It should be said that the Massachusetts case was affirmed by the Supreme Court of the United States, in *Bigelow* v. *Old Dominion Copper Co.,* 225 U. S. 111 (32 Sup. Ct. 641), the question involved being whether the Massachusetts court gave to the *Lewisohn Case* (being a New York judgment which was pleaded in bar in the Massachusetts suit) the full faith and credit which was required by the Constitution of the United States and the statutes thereunder. Of course, the Massachusetts court was not bound to follow the United States Supreme Court upon the main questions decided in the *Lewisohn Case.* This court has adopted the doctrine of the Massachusetts case.

There is no question that the defendant Wiley, as a promoter, stood in a fiduciary relation to the plaintiff and to those who subscribed for its stock. As such

he was bound to act in good faith and to deal with them in perfect candor. The principle on which courts of equity proceed in these cases is a very familiar one. The promoter of the company, like its directors, is deemed to sustain towards the members of the company, and toward the corporation, the relation of trustee toward his *cestui que trust.* This being so, he will not be permitted to speculate out of that relation, or to derive any secret advantage from it. 7 R. C. L., "Corporations," § 51 *et seq.*

The evidence shows that subsequent to the organization of the plaintiff, certain of its stock, which had been surrendered in pursuance of the alleged agreement, had been sold to stockholders who had no knowledge of the agreement or arrangement alleged in the bill of complaint.

From the evidence contained in this record, we are of opinion that the plaintiff has sustained the burden of proof by showing the arrangement between the defendant Wiley and the other incorporators, substantially as alleged in the bill of complaint. On the familiar principle that where property or money has been received by, or is found in the possession of, a fiduciary in violation of a fiduciary duty, a court of equity has jurisdiction to compel restitution, a suit in equity may be maintained by a corporation against a promoter to recover the same; and in equity that kind of relief will be granted which is best adapted to the situation at the time it is applied for. *Old Dominion Copper Co.* v. *Bigelow, supra; Yeiser* v. *U. S. Board & Paper Co.,* 46 C. C. A. 567 (107 Fed. 340, 52 L R. A. 724).

We have no doubt of the right of this plaintiff to maintain this action. We are satisfied that the defendant Wiley, sustaining a trust relation to the plaintiff, has in his possession certain shares of the capital

stock of the plaintiff, placed in his possession for the purpose of benefiting the plaintiff; that he has never paid for such stock, and that he now denies the trust relation and asserts ownership of the stock and refuses to account to the plaintiff therefor. He, himself, admits that he did not have ownership of the patents, and fails to show wherein he is entitled to the possession of the stock. Manifestly, the plaintiff corporation is interested in the amount of its assets and capital stock, and may maintain an action against any person who has possession, wrongfully, of such assets. The defendant is in no position to deny the legality of the organization of the plaintiff company, and we think the agreement, as set up in the bill of complaint, with defendant Wiley, to account to the plaintiff for the stock received by him was valid, not opposed to public policy, and, in any event, that under the circumstances here disclosed, said defendant is in no position to claim that said agreement was invalid. Whatever would be an injury to the shareholders would be an injury to their collective or corporate interests, and the company is the proper plaintiff to enforce such rights. A shareholder would be required to first request the plaintiff to bring such a suit, before he could have any standing in a court of equity. We are, therefore, of the opinion that the bill states a good cause of action in favor of the corporation, and that its right to sue under such circumstances is settled upon principle and authority. *Pittsburg Mining Co.* v. *Spooner*, 74 Wis. 307 (42 N. W. 259). Many authorities are cited in this case to the effect that such an agreement, as is alleged in the bill of complaint, constitutes an implied trust in the defendant, for the benefit of the corporation, and that an action by the corporation will lie, in the case of the breach of such trust.

The court below having found in favor of defendant

Dickinson, and the plaintiff not having appealed, his rights are not before us.

The bill of complaint alleged that the defendant Wiley might retain a sufficient amount of stock to repay him for the value of the patents, and for the work which he would do in promoting the interests of the corporation, and in securing investments of capital therein. We are satisfied, from the testimony of defendant Wiley, himself, that he had no substantial interests in the patents, or either of them; but, desiring to do justice to all the parties in the case, we are not satisfied that the work which he did in promoting the organization and interests of the corporation was of no value. He seems to have spent considerable time in the interest of the organization of the corporation, and for two or three months thereafter, jointly with the other officers, when he "washed his hands" of the matter. He has had the benefit of the 20 shares of stock standing in the name of defendant Dickinson; but we are constrained to hold that, under the evidence, the value of his services for the corporation has exceeded that amount. We think the decree of the circuit court should be affirmed as to 60 shares of the capital stock of the corporation instead of 80 shares, as provided in such decree, and that the defendant should surrender for cancellation 60 shares of said stock instead of 80 shares, and as thus modified the decree will be affirmed, without costs in this court to either party.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.