## EPSTEAN v. MINTZ.

1. EQUITY—ACCOUNTING—ORAL CONTRACT—EVIDENCE—SUFFICIENCY.
   In a suit for an accounting under an oral contract whereby defendant agreed to pay to plaintiff a certain per cent. of the profits arising out of the income and operation of certain real property and from its resale as a consideration for plaintiff's services and advice in purchasing, handling, and reselling the property, evidence *held*, sufficient to establish the contract as claimed by plaintiff.

2. PERPETUITIES — CONTRACTS — REAL PROPERTY—RESTRAINT UPON ALIENATION.
   A contract whereby defendant purchaser of real property agreed to resell when plaintiff advised to do so and pay to him a certain per cent. of the profits as compensation for his services cannot be said to be void as a restraint upon the power of alienation, since the agreement was not to withhold from sale, but to sell when plaintiff advised.

3. EQUITY—LACHES—ESTOPPEL.
   Plaintiff's delay of 4½ years in bringing suit did not amount to laches barring his right to recover, in the

On effect of statute of frauds upon parol contract for sharing profits, which may, but are not intended to be performed within a year, see note in 15 L. R. A. (N. S.) 317.

absence of any showing by defendant of any inequities arising out of such delay.

4. FRAUDS, STATUTE OF—ORAL CONTRACT—REAL PROPERTY.

An oral contract for a share of the profits arising from the management and sale of lands is not void under the statute of frauds, since it is not a contract for the sale of an interest in lands required to be in writing.

5. SAME—VALIDITY OF ORAL CONTRACT NOT PERFORMED WITHIN A YEAR.

Nor was said contract void under the statute of frauds because not performed within a year, where it was capable of being completely performed within a year, and there were no provisions therein to the contrary, even if the parties intended that it should extend over a longer period.

6. LIMITATION OF ACTIONS.

Where plaintiff's cause of action arose in 1916, and he commenced suit in 1920, the statute of limitations has no application.

7. EQUITY—ACCOUNTING—TERMINATION OF PERIOD.

The period for which plaintiff was entitled to an accounting for profits arising from rentals terminated on the date that he advised defendant to sell, and the profits on resale should also be determined from the sale price as of said date, since plaintiff's cause of action arose on said date.

Appeal from Wayne; Webster (Arthur), J. Submitted January 29, 1924. (Docket No. 18.) Decided April 10, 1924. Rehearing denied June 18, 1924.

Bill by George G. Epstean against Samuel Mintz for an accounting. From a decree for plaintiff, defendant appeals. Modified and affirmed.

*Donnelly, Hally, Donnelly & Munro, Butzel, O'Brien, Levin & Winston,* and *Stevenson, Carpenter, Butzel & Backus,* for plaintiff.

*William Henry Gallagher* and *Ormond F. Hunt,* for defendant.

McDONALD, J.    The purpose of this bill is to secure an accounting and an interest in the profits arising out of the purchase of certain real estate.    The plaintiff, who is a real estate broker, claims to have been employed on a commission basis by the defendant to negotiate the purchase of the Hilsendegen block, which is located in the down town district of the city of Detroit.    It is his claim that before the purchase was consummated the owners raised the price and the defendant refused to go on with the negotiations; that the plaintiff, who has large experience in handling such properties, and was familiar with its values and possibilities, convinced the defendant that it was a good buy at the advanced figure, and as a further inducement to continue the negotiations, offered to forego his commission and take his compensation out of the profits; that this was agreeable to the defendant; that thereupon they entered into an agreement by which the plaintiff was to represent the defendant in purchasing the property, to assist him in disposing of certain litigation in which it was involved, to aid him in securing a cancellation of the old leases and in obtaining others at a higher rental, to assist in the operation and management of the property and in its resale, when in the judgment of the plaintiff it was most advantageous to make a sale, and that for all of such services the plaintiff was to be paid 20% of the net profits arising out of the income and operation of the property, and from its resale.    It is the plaintiff's claim that he faithfully performed his part of the contract; that after the property was purchased it greatly increased in value and that the defendant refused to sell when advised to do so, and denied that plaintiff had any interest in the profits. Subsequently the plaintiff filed his bill for an accounting.

On his part, the defendant denies that there was an agreement by which the plaintiff was to receive

a share of the profits.    He says that the contract for
the purchase of the block provided for a cash payment
of $5,000 and a further payment of $47,000 within
four months after the determination of the litigation
in which the property was involved; that it was under-
stood with the plaintiff that the property must be
resold before the time for the payment of the $47,000
because defendant was financially unable to meet such
a large payment; that the plaintiff agreed to sell it
within that time and that for his services he was to
receive 3% of the selling price; that the property was
not sold, and that, therefore, plaintiff was not entitled
to a commission.

The circuit judge found the agreement to be as
claimed by the plaintiff and entered a decree for an
accounting, for a sale of the property and the pay-
ment to the plaintiff of his share of the profits.    From
this decree the defendant has appealed.

It is first claimed that the conclusion of the court
as to the existence of the contract, testified to by the
plaintiff, is not supported by the weight of the evi-
dence.    It is apparent from the able opinion filed by
the circuit judge as a basis for his decree that he has
given this case very careful consideration.    He points
to some strong proof in corroboration of the plaintiff's
claim that he was to have a share in the profits and
concludes that the plaintiff's theory of the contract
is supported by the overwhelming weight of the evi-
dence.    An extended analysis by us of this testimony
would serve no useful purpose.    Our consideration
of it has convinced us that there was at least a pre-
ponderance of the evidence that the agreement was as
plaintiff claims.

It is strenuously insisted by the defendant that,
conceding the contract to be as plaintiff contends, there
can be no recovery because it restrains the defend-
ant's power of alienation and was therefore void.    The
trial judge took the view that there was a restraint

upon alienation by the defendant, but that it was not such an integral part of the agreement as to render the whole contract void.    We think the court and counsel wrongly interpreted the language of the agreement which it is claimed restrained the power of alienation.    As we read the evidence that question is not in the case.    The testimony clearly shows that Mr. Mintz was not bound to hold the property, but could sell it whenever he desired.    The defendant, of course, claims that he made no agreement restricting his right to sell whenever it pleased him to do so. And the plaintiff throughout his entire testimony insisted that there was no agreement by which the defendant was bound to hold the property, but that he could sell it at any time.    We quote from the plaintiff's cross-examination where he was thoroughly interrogated in regard to the details of this part of the agreement.

"*Q.* So as I understand you now, Mintz knew right from the start that if he entered into the arrangement to which you have testified, that the property was to stay there until you said sell; and that he was to develop that property according to your ideas and your judgment?

"*A.* I was to help in the development of it.

"*Q.* Advise him in the development?

"*A.* Advise him as to the development and he was to use my advice.    There was nothing said about— there was nothing meant in our conversation or in our agreements, whereby he was bound to, that he was bound to hold this property.    There was no talk about that.    That question did not come up at all, where he was bound to hold this until I said sell.    That was the arrangement that he was to use my judgment and let me go ahead, but at the time later on, when he suggested selling and I said it was not a proper time, I would go ahead with one or two parties to please him and see if it could be sold.    I never said to him, when he suggested later on that the increase came, that the sale might be made, I would tell him

that was not the time to sell, but nevertheless I would go ahead against my better judgment.

"Q. Then he was not bound entirely by your judgment in the matter?

"A. I did not consider him bound to hold it, or I mean, bound, if he wanted to sell, that I was going to make him hang on.   That was never my understanding, that I was going to make him hang on if he felt that he wanted to sell.   That was my intention, my attitude towards him, but so far as our agreement is concerned, it was silent upon that proposition.   It was merely that he would sell when I said so."

Because of this testimony supplemented by the fact that both parties were trying to sell the property in 1911, 1912 and 1913, we think that the question of restraint upon the power of alienation is not in the case.   The agreement was not to withhold from sale, but to sell when plaintiff advised.   It was plaintiff's understanding that the defendant wished to avail himself of his experience in handling centrally located property, and would take his advice as to the time when it would be advantageous to sell.   This falls far short of amounting to a restraint upon defendant's power of alienation.

Again, it is urged by counsel for the defendant that the plaintiff's right to a recovery under the contract is barred by laches.   Mr. Mintz acquired the property in June, 1912.   On May 31, 1916, the plaintiff wrote Mintz a letter advising him that it was then a good time to sell and that he could secure a purchaser for him.   Mr. Mintz declined to sell.   The plaintiff then demanded an accounting which the defendant refused, denying the plaintiff's claim to any share in the profits.   Instead of bringing an action at once the plaintiff delayed until 1920, when this suit was instituted.   He slept on his rights for four and one-half years.   Is this delay a bar to his recovery?   We think that we can do no better than quote with ap-

proval that part of the trial judge's opinion in which he disposed of this question.

"By the weight of authority mere delay (short of the statute of limitations) in enforcing a right does not operate as a bar. The controlling consideration seems to be whether there is an inequity, founded on some intermediate change of conditions. Although defendant's counsel in their brief refer to a number of persons who have died prior to the trial, the record does not disclose that defendant has suffered any serious loss or obscuration of evidence by the delay. It is true that there has been a great change in the value of the block involved, but this has been an increase, which inured more to the benefit of the defendant than to the plaintiff. It is true that Mintz has had the management of the building during this period of the delay, but he himself chose not to consult Epstean.

"In my opinion the testimony in this case does not disclose such inequities arising out of plaintiff's delay as would warrant the court in finding that plaintiff's right of action has been barred by laches."

For two reasons defendant claims that the contract was void under the statute of frauds. *First,* because it was an oral contract for the sale of an interest in lands, and *second,* because it was not to be performed within one year. As to the first contention the plaintiff's suit is not based upon any interest in lands, but upon profits arising from the management and sale of lands. The contract was made prior to the amendment of the statute of frauds, and at that time was not required to be in writing. On this question the case is ruled adversely to the defendant by *Carr v. Leavitt,* 54 Mich. 540.

There are no provisions in the contract that would render it incapable of being performed within a year. The contract would be completely performed upon a resale of the property. It seems to have been the judgment of the plaintiff that it would be better to hold it for a couple of years or until more profitable leases

could be secured. But the agreement did not bind the defendant to hold it for that length of time. He could sell whenever he wished. If by the terms of the contract it was capable of being completely per- formed within one year, it was not void under the statute of frauds, and this is true even though the parties intended that it should extend over a longer period. In *Smalley* v. *Mitchell,* 110 Mich. 650, this court said:

"The mere fact that a contract may or may not be performed within the year does not bring it within the statute. The rule is that if, by any possibility, it is capable of being completed within a year, it is not within the statute, though the parties may have intended and thought it probable that it would extend over a longer period, and though it does so extend."

It is further urged by the defendant that plaintiff's claim is barred by the statute of limitations. His cause of action arose in May, 1916, when he was first entitled to an accounting. As he brought suit in 1920, within the six-year period, the statute of limitations has no application.

The defendant has assigned many other reasons why the decree should be reversed. We have examined all of them but have only referred to those which seem to require discussion.

Having established a contract entitling him to a share in the profits arising from the operation of the block in question, and from its resale, it follows that the plaintiff is entitled to an accounting in a court of equity. But he is not entitled to an accounting for any profits arising either from the rentals of the building or from the sale value of the property after June 3, 1916. It was on June 29, 1912, that the defendant came into possession. It was on June 3, 1916, that he refused to sell and denied plaintiff's claim to any profits. The refusal to sell affected the plaintiff's interests only to the extent that they would

have been affected by a sale, at that time.    It was then that his contract matured.    Thereafter, he had no interest in the profits.    The accounting as to the profits arising from rentals should cover the period from June 29, 1912, to June 3, 1916.    The profits which the contract gave him on a resale must be determined from the sale price as of June 3, 1916.    In respect to the period which the accounting should cover the decree must be modified.    In all other respects it is affirmed.    The defendant will have costs.

CLARK, C. J., and BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.