FALKNER *v.* FALKNER

1. PARTNERSHIP—EXISTENCE—TEST.

The most frequent test used to determine whether a partnership exists is the parties' intention.

2. PARTNERSHIP—PROFITS—EVIDENCE.

Sharing of profits, while not conclusive, is *prima facie* evidence of a partnership.

3. PARTNERSHIP—RIGHTS OF MANAGEMENT.

Rights of management of a party rendering services is one of the indicia of a partnership.

4. PARTNERSHIP—EMPLOYMENT—BURDEN OF PROOF—RELATIVES.

The circumstances of the relationship during the period of the association determines whether a partnership or employment relationship existed.

5. PARTNERSHIP—RELATIVES—BURDEN OF PROOF.

The party asserting that a partnership or joint venture, not an employment relationship, existed has the burden of proof and stricter proof is required in an action between relatives.

6. APPEAL AND ERROR — FINDING OF FACT — PARTNERSHIP — JOINT ADVENTURES — RELATIVES — EVIDENCE.

Trial judge's finding of fact that no partnership existed and at most there was an implied joint venture between the parties was not against the great weight of the evidence where the parties were relatives, dealt with each other in a casual way, never thinking or caring about the future legal consequences

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur, Partnership § 43.
[2] 40 Am Jur, Partnership § 33.
[3] 40 Am Jur, Partnership § 51.
[4] 40 Am Jur, Partnership § 45 *et seq.*
[5, 6] 40 Am Jur, Partnership § 82 *et seq.*
[7] 46 Am Jur 2d, Joint Ventures § 62.

of their actions, kept inaccurate records, and sometimes failed to keep any records, failed to file a certificate of partnership, did not clearly share profits, filed partnership tax returns, where there was little evidence that third persons believed that there was a partnership, and where the plaintiff was regarded as the association's business manager.

7. JOINT ADVENTURES—COMMON POT—CAPITAL INVESTMENT.

The trial judge's decision to divide the "common pot" of a joint venture equally among the parties instead of ordering an accounting was not clearly erroneous where there was conflicting testimony as to withdrawals made during the years in question; however, $23,000 originally contributed as a capital investment by one of the parties should have been returned to him before the cash on hand was divided equally.

Appeal from Van Buren, David Anderson, Jr., J. Submitted Division 3 April 7, 1970, at Grand Rapids. (Docket No. 7,495.)   Decided June 24, 1970.

Complaint by A. John Falkner, Jr., against A. John Falkner, Sr., and Jennie Falkner, and O. George Falkner, and Patricia Falkner, for a one-third interest in lands and personal property, an accounting, and cancellation of certain warranty deeds. Judgment for plaintiffs.   O. George Falkner and Patricia Falkner, appeal.   A. John Falkner, Sr., and Jennie Falkner cross-appeal.   Affirmed.

*Killian, Spelman & Taglia,* for plaintiff.

*Sheldon Rupert,* for defendants A. John Falkner, Sr., and Jennie Falkner.

*Stratton, Wise, Early, Starbuck &· Lennon,* for defendants O. George Falkner and Patricia Falkner.

Before: HOLBROOK, P. J., and BRONSON and E. W. BROWN, JJ.

BRONSON, J.  This action is brought by A. John Falkner, Jr. against his father, A. John Falkner, Sr., and his brother, O. George Falkner, seeking a one-third interest in certain lands and personal property and for an accounting arising out of an alleged partnership.  The plaintiff further seeks a cancellation of certain warranty deeds.  The essence of this suit basically is that plaintiff claimed and defendants denied that a partnership existed between A. John Falkner, Sr. and the plaintiff from 1946 until 1953 and that in 1953 a subsequent new partnership was formed including O. George Falkner, which new partnership lasted until 1961 and terminated with the retirement of John, Sr.  From a partial judgment for plaintiff in the trial court below, defendants appeal.

The property in question is:

1. An 87-acre farm purchased by A. John Falkner, Sr. in 1933 and now used for growing strawberries.

2. A 40-acre parcel purchased in 1945 in the name of Robert Falkner which was later conveyed to A. John Falkner, Sr.

3. A 51-acre parcel purchased in 1946 in the names of A. John Falkner, Sr. and A. John Falkner, Jr. as tenants in common.

4. A 78-acre parcel purchased in 1951 in the names of A. John Falkner, Sr. and Jennie Falkner, husband and wife.

5. A 56-acre parcel purchased in 1965 in the names of O. George Falkner and A. John Falkner, Jr. as joint tenants with rights of survivorship.

6. Personal property worth $67,000 and cash-on-hand of $137,000.

The evidence presented below was that John, Jr. had taken over active management of the farm in 1945 and contributed as active manager to 1965 or

1966. O. George Falkner began working on the farm in 1951 and worked up until the present suit.

Copies of inclusive income tax returns for the years in question of plaintiff and defendants were put into evidence. However, A. John Falkner, Jr.'s returns for the years before 1953 and for the 1964 to 1965 were not produced. Partnership returns were filed for the years 1953 to 1963 and business activity returns were filed from 1954 to 1963. All returns apparently were prepared by John, Jr.

No records of the farming operation were kept by A. John Falkner, Sr. and John, Jr. handled whatever accounts were kept after 1946. The funds derived from all farming operations were not divided but were kept in a "common pot" from which both parents and the children withdrew money as they needed it. No records were kept of these withdrawals.

Except for the filing of partnership tax returns, the only evidence presented by the plaintiff alleging the existence of a partnership came from his own testimony. He testified that his father in 1946 had said they would be "partners" and at other times referred to a partnership. Plaintiff also testified that no discussion of the partnership was had with either his brother Robert or sister (Anne Bohle) nor with any third parties. Plaintiff also admitted that he contributed no capital and that no certificate of partnership was ever filed.

A. John Falkner, Sr. testified that he made no statements to John, Jr. concerning a partnership. It was his belief that John, Jr. and George managed the farm, with plaintiff being the business manager. The testimony of Jennie Falkner, O. George Falkner, Robert Falkner, and Anne Bohle substantially supported that of the father.

In 1965 A. John Falkner, Sr. conveyed by warranty deed all the real estate in question to O. George Falkner, and subsequently this action was brought. The trial court found that no partnership existed between 1946 and 1953, but that at most there was sort of an "implied joint venture" existing between the parties from 1953–1965 to raise strawberries. The tangible property and real estate were found to belong to A. John Falkner, Sr. with no intention that it vest in any partnership.

The judge found that the agreement called for the parties to withdraw from the "common pot" that which they needed for living expenses and that title to the real estate should vest as stated in the deeds. The money left in the common pot accordingly was ordered divided by the parties equally.

As to a home built by plaintiff personally on one parcel the judge felt that the parties contemplated that it belonged to the plaintiff and he was so awarded it.

The trial court, in an opinion entered August 27, 1968, divided the property in the following way:

"Judgment may enter in this cause confirming title to the real estate involved in the title holders of record as of September 30, 1965; confirming title to the machinery and farming equipment and personal property in A. J. Falkner, Sr., as of September 30, 1965; confirming title to the automobiles in the possession of the parties to the respective possessors thereof; setting off and confirming title in the residence property occupied by plaintiff as a home to plaintiff; and dividing the cash accumulation, which at the commencement of suit was $137,469, equally among A. J. Falkner, Sr., A. J. Falkner, Jr., and O. George Falkner."

The trial court, in a judgment entered May 20, 1969, ordered:

"It is hereby ordered that title to the following described real property is hereby confirmed in the names of the title holders of record, as indicated, as of September 30, 1965, to wit:

"*Parcel No. 1.* Township of Keeler, County of Van Buren, State of Michigan, to wit: Commencing at the Southeast corner of Sec. 10, Town 4 South, Range 16 West, according to the Government Survey thereof, thence North on the East line of said Section, 952.8 feet to the center of the East and West Highway, thence Westerly on same to the North and South eighth line in the Southwest Quarter of said Section 10, thence South on same 957.9 feet to the South Section line, thence East on same to beginning, according to a survey made by T. A. Smith, County Surveyor, December 9, 1933, in the names of A. John Falkner, Sr. and Jennie Falkner, husband and wife.

"*Parcel No. 2.* Township of Hartford, County of Van Buren, State of Michigan, to wit: That part of the East Half of the Northeast fractional Quarter of Sec. 15, Town 3 South, Range 16 West, according to the Government Survey thereof, lying Northerly of the center line of the road now known as Highway U.S. 12 (except the right of way with the Pere Marquette Railroad, now known as the Chesapeake and Ohio Railroad) in the names of A. John Falkner, Sr., and Jennie Falkner, husband and wife.

"*Parcel No. 3.* Township of Hartford, County of Van Buren, State of Michigan, to wit: The West Half of the Northeast Quarter of Sec. 15, Town 3 South, Range 16 West, in the names of A. John Falkner, Jr. and O. George Falkner, as joint tenants with full rights of survivorship.

"It is further ordered that the title to the machinery, farming equipment and personal property used in the connection with the operation of the Falkner Strawberry Farms is hereby confirmed in the name of A. John Falkner, Sr., as of September 30, 1965.

"It is further ordered that title to the automobiles is hereby confirmed in the names of those parties in possession thereof.

"It is further ordered that title to the following described parcel of real property in the Township of Hartford, said County and State, to wit:

"Beginning in the center line of Red Arrow Highway 291.0 feet North 86 degrees 30 minutes East from where it intersects the North and South eighth line of the Northeast Fractional Quarter of Sec. 15, Town 3 South, Range 16 West, and running thence North parallel to said eighth line 325.06 feet, thence North 86 degrees 30 minutes East 135.88 feet, thence South parallel with said eighth line 325.06 feet, thence South 86 degrees 30 minutes West 135.88 feet to beginning,

is hereby confirmed in the name of A. J. Falkner, Jr.

"It is further ordered that the sum of $88,899.00, plus accumulated interest, and less the expenses of Receivership, shall be divided among the parties.

"It is further determined that the Defendant A. John Falkner, Sr. had no cash capital investment as of January 1, 1953, for which he should now be reimbursed, over and above the interests herein granted.

"It is further determined that no accounting will be required from any of the parties as to withdrawals from the general assets up to the time of the commencement of this suit, it hereby being determined that such withdrawals were the compensation of the respective parties according to their implied agreement."

. The defendants in the action below, being unsatisfied, bring this appeal.

The position of appellants is that no evidence of the existence of a partnership was presented, save the testimony of John, Jr. that his father told him there would be a partnership. Appellants contend that John, Jr., like his brother George, was an em-

ployee of A. John Falkner, Sr. and that this is supported by the evidence. Therefore, appellants agree with that portion of the lower court's opinion finding no partnership or joint venture before 1953.

Appellants object, however, to that portion of the court's finding which allows the real estate to stay with the persons whose names appear on the deed. It is argued by appellants that this is inconsistent with the trial judge's earlier finding that there was no intention that any real estate vest in anyone other than A. John Falkner, Sr. Appellants feel that the 56-acre farm, although purchased in John, Jr.'s and George's names, was intended to go to A. John Falkner, Sr. and that that portion of the trial court's finding should be reversed.

Appellants also object to the awarding of the residence home to John, Jr. because no evidence was produced as to the intention of the parties regarding it. Again citing the inconsistency of the court's opinion in stating that all real estate should go to A. John Falkner, Sr., appellants contend that the court has in effect built John, Jr. a home and that it should have done the same for George.

Appellants further contend that even conceding that there was a joint venture from 1953 to 1965, the court improperly divided the cash in the "common pot". The evidence shows that cash on hand at the beginning of the venture was at least $23,000 and that this was a capital investment which should be returned to the defendant father before the excess is divided.

It is further contended by appellants that if a partnership or joint venture were found to exist after 1953 the partners are entitled to an equal share of the accumulated profits before any drawings for living expenses and not an equal share of

what was left after the drawings, as the court below found.

Appellants finally allege that if a partnership or joint venture were found to exist between 1953 and 1965, the defendants as partners are entitled to an accounting.

Plaintiff contends that the trial judge found that a joint venture arose by implication from the parties' "conduct and acts" and this finding was proper under the law. Plaintiff argues that the cases hold that the courts can determine that a partnership existed without holding that there was a formal agreement of any kind. There was, plaintiff asserts, an informal agreement between the parties which was something more than an employer-employee relationship.

With regard to the award of plaintiff's residence to him, plaintiff submits that the trial judge was correct when he found that the parties intended it to be plaintiff's home. They helped him build it and made no objection to his withdrawing money for its construction, thus evidencing the intent that it belonged to the plaintiff.

Plaintiff also argues that it was not inconsistent nor error for the court below to award the 56-acre farm to the parties whose name appears on the deed, thus giving plaintiff an interest in it. There was testimony that the money for purchase of the property came from a savings account in John, Jr.'s and defendant's names. Additionally, plaintiff points out that the parties made no objection to title being in those names at the date of the acquisition, thus evidencing an intent that they go to those parties on the deed.

As to the division of the cash on hand, plaintiff submits that the trial judge was correct in simply dividing it three ways because it would be impossible

at this date to determine how much each took out. The fact that plaintiff may have drawn more than defendants for family needs is also not unusual in view of the size of his family.

In view of the finding that no partnership existed between 1946 and 1953, which decision no party complains of, it is only necessary that this Court determine whether there is enough evidence to support the awards made by the court below based on his finding that a joint venture existed between the parties after 1953.

The situation with which the trial judge was faced was a difficult one. The most frequent test as to whether a partnership exists is the parties' intention, *Barnes* v. *Barnes* (1959), 355 Mich 458; *Lobato* v. *Paulino* (1943), 304 Mich 668; *Canton Bridge Co.* v. *City of Eaton Rapids* (1895), 107 Mich 613, but the parties to this action did practically nothing during the dates in question to indicate what their intentions were. Consequently, the court had to make a determination of whether the plaintiff was anything more than an employee of his father and the question facing this Court is whether the trial judge's decision, based on the evidence before him, was erroneous.

For purposes of this discussion no distinction need be made between a joint venture and a partnership as that distinction is not controlling. *Winshall* v. *Winshall* (1945), 311 Mich 647, 652.

In Annotation (1942), 137 ALR 6, the question of distinguishing between partnerships and employment situations is dealt with in depth. Citing *Beecham* v. *Dodd* (Del, 1842), 3 Harr 485, the annotation states that whether a partnership exists is "a question of fact." It then goes on to list several of the criteria to which the courts look in answering the question and an analysis of the facts of that

case as related to some of the criteria set out in that annotation may be helpful. (The criteria set out in the annotation are supported by several Michigan cases as indicated, *infra*.)

In 137 ALR at 33 it is stated that the sharing of profits or losses is indicative of a partnership and lack of an agreement to so share is evidence of an employment relationship. In Michigan, while not conclusive, sharing of profits is *prima facie* evidence of a partnership. *Lobato* v. *Paulino, supra*. See, also, *Klein* v. *Kirschbaum* (1927), 240 Mich 368. In the instant case the money earned between 1953 and 1965 was kept in a "common pot" for each party to withdraw funds as needed. No mention was made as to a sharing of losses; and whether these withdrawals were to be considered a sharing of profits or wages cannot be determined from the evidence presented. Seemingly the parties gave no thought whatsoever to the matter and therefore the determination by the trial judge in this regard, based on the parties' conduct and acts as he saw them, was not erroneous.

An additional basis mentioned at 137 ALR at 64 is that if a party rendering services has rights of management, that is indicia of a partnership. *Runo* v. *Rothschild* (1922), 219 Mich 560, 563. It seems clear that the plaintiff in this action had rights of management especially in view of the fact that he kept all accounts, made out all tax forms, and was able to build a house out of common funds. The defendant also testified to the effect that he looked upon John, Jr. as the business manager.

At 137 ALR 86 it is pointed out that the use of the term "partner" may be given some weight. While the defendants deny that this term was ever used, the judge as the finder of fact could believe the plaintiff's version of conversations and thus could

consider the alleged use of the term in arriving at his decision.

The strongest evidence in support of that decision is the fact that partnership returns were filed for the years 1953 through 1965. This indicates some intention that a partnership existed and was entitled to be considered by the trial judge. See 137 ALR at 93.

There also is evidence against the conclusion that a partnership existed. For example, absent the finding that a partnership existed before 1953, plaintiff had no capital investment in this venture and this indicates an employment relationship. 137 ALR at 47. *Canton Bridge Co.* v. *City of Eaton Rapids* (1895), 107 Mich 613. In addition, there is little evidence, save the fact that the name "A. John Falkner and Sons" appeared on checks, that strangers to the action believed they were dealing with a partnership. 137 ALR at 79. The fact that neither Robert Falkner nor Anne Bohle believed that a partnership existed is also entitled to some weight.

The Michigan rule on whether a relationship is one of employment or partnership is simply that a determination is dependent on "the circumstances of the relationship during the period of their association." *Moore* v. *DuBard* (1947), 318 Mich 578. The burden of proving whether such a relationship was more than employment is on the plaintiff, *Klein* v. *Kirschbaum, supra,* and because this action was between relatives even stricter proof is required. *Cole* v. *Cole* (1939), 289 Mich 202; *Block* v. *Schmidt* (1941), 296 Mich 610.

Faced with these difficult and somewhat ambiguous tests and the quagmire of evidence and exhibits, the trial judge attempted to make what he considered an equitable settlement.

There is evidence to support the fact that the residence of plaintiff was intended to belong to him. Also in view of the fact that title was taken in George's and John, Jr.'s names regarding the 56-acre parcel, a decision holding that it was intended to be shared by them was not improper. As to the money left in the "common pot", in view of conflicting testimony as to withdrawals, etc., during the years in question the decision of the trial judge to divide that item equally was not clearly erroneous.

With reference to whether the judge should have allowed an accounting, the case of *Fitzsimons* v. *Foley* (1890), 80 Mich 518, 524, speaks directly to this situation:

"* * * As all of the members of the firm of Foley Bros. & Co. swear that they never attempted to keep accurate accounts between themselves, and as it is evident that a just accounting could not now be had between them of nearly 25 years of business, a business carried on, as between themselves, with no written accounts, and the evidence of their dealings therefor resting in parol, we think the safest and most equitable course is to leave the copartners of this firm as they left themselves at the practical dissolution of the firm, in 1885. Each one seems to have kept what he had drawn out without question or protest from the others."

The parties to this action, as relatives, dealt with each other in a casual way never thinking nor caring about the future legal consequences of their actions. Consequently, they kept inaccurate and sometimes no records, leaving the trail of evidence difficult to trace. Therefore, since no legal questions were presented, but only a question of fact as to whether a partnership existed, it is our opinion that the trial judge's finding in that regard was not against the great weight of the evidence and should be affirmed

with the one correction that the $23,000 originally put up by A. John Falkner, Sr. be returned to him prior to the balance of the cash on hand being divided equally.

Affirmed.

All concurred.