LeZONTIER v SHOCK

1. Contracts—Oral Construction Contracts—Statute of Frauds —Time of Performance—Evidence—Performance Within Year—Statutes.

An oral construction contract does not come within the statute of frauds where the parties admit the instance of the contract but no time of performance is established either by the contract terms or the evidence produced and where there is any possibility that the contract is capable of being performed within one year (MCLA 566.106, 566.132[a]; MSA 26.906, 26.922[a]).

2. Contracts—Statute of Frauds—Oral Contracts—Performance Within Year—Statutes.

The statute of frauds applies only to those oral contracts which by their terms are not to be performed within one year from the date of their making; the mere fact that performance of a contract extends beyond one year or that the parties thereto intended or thought it probable that performance would extend beyond a one-year duration is insufficient to establish that by its terms the contract was not to be performed within one year (MCLA 566.106, 566.132[a]; MSA 26.906, 26.922[a]).

3. Contracts—Quantum Meruit—Express Verbal Contracts— Contracts Implied in Law—Performance Changes—Price.

Quantum meruit is inapplicable as a theory of recovery in a case where an express verbal contract exists since quantum meruit is founded upon a contract implied in law; however, quantum

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 73 Am Jur 2d, Statute of Frauds § 7 et seq.
[3] 17 Am Jur 2d, Contracts § 83.
[4] 17 Am Jur 2d, Contracts § 16.
[5] 60 Am Jur 2d, Partnership §§ 305–308.
[6] 59 Am Jur 2d, Partnership § 81.
[7] 18 Am Jur 2d, Corporations §§ 118, 339, 370.
    19 Am Jur 2d, Corporations § 738.
[8] 76 Am Jur 2d, Trusts §§ 239–241.
[9] 76 Am Jur 2d, Trusts §§ 221, 222.
[10] 18 Am Jur 2d, Corporations §§ 109, 135.

*meruit* may be used to formulate any recovery due an aggrieved party where the trial court finds that changes in the contract's performance were authorized without a price being stipulated.

4. CONTRACTS—PERSONAL CONTRACTS—CORPORATIONS.

An agreement with individuals concerning the acquisition of the stock of a corporation they were to form is a personal contract since no corporation exists at the time the parties enter into the contract.

5. PARTNERSHIP—IPSO FACTO CREATION—PROMOTERS—STOCK SUBSCRIBERS—CORPORATION NEVER FORMED—CREDITORS.

A partnership is not ipso facto created among the promoters and stock subscribers of a corporation which is contemplated by the parties but never formed; the promoters and stock subscribers do not sustain the relationship of partners *inter se* but are liable as partners to creditors of the business where the corporation never comes into existence.

6. PARTNERSHIP—EXISTENCE—QUESTION OF FACT—PARTIES' INTENT.

The intention of the parties is of prime importance in ascertaining the existence of a partnership since an agreement must be shown for a partnership to exist; this is a question of fact.

7. CORPORATIONS—STOCK SUBSCRIBERS—PROMOTERS—CORPORATION NEVER FORMED—CONSIDERATION—CONDITIONS PRECEDENT—LIABILITY.

A stock subscriber's remedy, where the promoter receives all or part of the stock subscription price for stock in a corporation to be formed and the corporation is not formed, is ordinarily an action against the promoter for return of the amount paid; the failure to organize the corporation is a failure of consideration creating liability of the promoters to the subscribers for the amount received, while incorporation is a condition precedent to a subscriber's liability.

8. TRUSTS—CONTRACTS—STATUTE OF FRAUDS—CONSTRUCTIVE TRUST—PROMOTERS—STOCK SUBSCRIBERS—CORPORATIONS—FRAUD.

The statute of frauds does not preclude the imposition of a constructive trust where a transaction entered into by the stock subscribers and promoters of a corporation to be formed that was never formed is found to be tainted by fraud, bad faith, dishonesty, or other circumstances warranting a constructive trust remedy.

9. Trusts—Fraud—Constructive Trust—Equity—Parties' Intention—Property—Actual Fraud—Constructive Fraud—Fiduciary Obligations.

Constructive trust is a fraud-rectifying equitable remedy that arises independently from the intention of the parties and is imposed where property is acquired by fraud, undue influence, or other circumstances that render it unconscionable for the wrongdoer to retain title or the benefits derived therefrom; the requisite fraud may be actual or constructive and may arise from violations of fiduciary obligations.

10. Corporations—Promoters—Fiduciary Relationships—Corporation Never Formed—Stock Subscribers.

The promoters of a corporation stand in a fiduciary relationship to members of the company and corporation; where a corporation is contemplated but never formed a fiduciary relationship obtains between the promoters and stock subscribers and subsists until either the relationship is dissolved by complete withdrawal of the subscriber from the enterprise, or it is converted to another organizational form by agreement of the parties.

Appeal from Wayne, Thomas Roumell, J. Submitted June 24, 1977, at Detroit. (Docket No. 23581.) Decided September 20, 1977.

Complaint by Phillippe P. LeZontier against Lawrence Shock, Clifford Shock and Shock Brothers, Inc., for recovery of the agreed price due under an oral construction contract and the imposition of a constructive trust upon certain real property. Judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Philip A. Gillis,* for plaintiff.

*James A. Tucker,* for defendants.

Before: D. C. Riley, P. J., and Bashara and P. R. Mahinske,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

Bashara, J. Plaintiff brings this appeal seeking review of the trial court's verdict of no cause of action. Plaintiff sought recovery for breach of an oral construction contract and the imposition of a constructive trust upon certain real property. Defendants allegedly used, as part of the purchase price, money paid to them by the plaintiff as the subscription price for stock in a corporation to be formed by defendants. As to plaintiff's interest in the land, he asserted an alternative theory of recovery. He claimed that since the corporation was never formed by defendants, the plaintiff, defendants, and other stock subscribers became partners. He alleged that the land was a partnership asset.

The trial court's verdict, denying plaintiff any recovery, was based upon the application of the statute of frauds. MCLA 566.106 and 566.132 (a); MSA 26.906 and 26.922 (a).

At trial the evidence adduced tended to show that at some time prior to March, 1968, the plaintiff and individual defendants had discussions about embarking upon a business of producing wood chips. Apparently, the parties contemplated that the business would be conducted in a corporate form and that the individual defendants[1] would be the promoters.

The parties agreed on a suitable parcel of real estate upon which to construct the wood processing facility. In March, 1968, plaintiff paid $10,000 to the defendants as a subscription price for stock in the corporation yet to be formed. That money, with plaintiff's knowledge and acquiescence, was used with the money of other subscribers to make

---

[1] Nothing in the record tends to show the precise role played by the corporate defendant. Therefore, henceforth, any reference to "defendant" will mean the individual defendants, Lawrence and Clifford Shock.

the down payment on the real estate. Plaintiff also knew that the defendants were named as the sole vendees in the land contract.

Contemporaneously with the acquisition of the real property, the litigants entered into an oral contract for the construction by plaintiff of the building in which the business would be housed. Plaintiff's testimony alleged the contract price to be $53,850. Defendants' testimony contended the contract price was set at $48,000. Further conflict in the parties' testimony revolved around the scope of the contract's performance; that is, the items deleted from the plaintiff's contract responsibilities, but shown on the building plans and specifications, and additional-cost items actually installed by plaintiff.

Notably, however, the litigants' testimony was in agreement that an oral construction contract was formed and that no time for performance was included in its terms. Nor was any evidence adduced that the contract could not be performed within one year from the date of its making.

Prior to completion of the building and before the formation of the corporate entity, the fledgling business enterprise was beset by a fatal development; its sole customer left Detroit. Plaintiff thereafter ceased construction, allegedly on the order of defendant Lawrence Shock. Plaintiff also learned that a portion of the realty, inessential to the business, was sold by the defendants. Subsequently, plaintiff resumed construction of the building, allegedly at the request of defendant Lawrence Shock. However, some time prior to the completion of construction, the defendants assumed occupancy of the building for their own use and, by changing the doorlocks, prohibited plaintiff from gaining access.

Plaintiff alleges that the trial court erred in denying the enforceability of the oral construction contract. It is plaintiff's contention that the statute of frauds is inapplicable since nothing in the contract established that performance was not to be completed within one year from its making.

Plaintiff also asserts that the trial court erred in denying him an interest in the real property acquired by defendants. Both a partnership theory and a constructive trust basis of recovery are advanced by plaintiff, contending that the partnership resulted from failure to form the corporation and a constructive trust is available to rectify defendants' breach of fiduciary duty.

Essentially plaintiff's suit involves two causes of action, each raising independent issues. The breach of contract claim presents the issue of whether an oral construction contract comes within the statute of frauds where the parties admit the existence of the contract, but no time of performance is established either by the contract terms or the evidence produced. Plaintiff's action to establish his interest in the real property raises the question of appropriate relief where a corporation is contemplated and not formed, but the money paid by the subscribers is used to purchase realty.

Addressing the breach of contract issue first, we conclude that the oral construction contract is *not* within the statute of frauds.[2] Numerous cases have construed the pertinent text of that statute, but *Epstean v Mintz,* 226 Mich 660; 198 NW 225 (1924), exemplifies its proper application.

In *Epstean* the Supreme Court held that if by

---

[2] The pertinent portion of the statute is as follows: "An agreement that, *by its terms,* is not to be performed within 1 year from the making thereof." MCLA 566.132(a); MSA 26.922(a). (Emphasis added.)

any possibility an oral contract is capable of being performed within one year it is *not* within the statute of frauds. That Court also concluded that an oral contract is not within the statute even if the parties thereto intended or thought it probable that performance would extend beyond a one-year duration and, in fact, the performance did so extend. An earlier case, *Barton v Gray,* 57 Mich 622; 24 NW 638 (1885), reached the same result, holding that the statute applies only to those contracts which *by their terms* are not to be performed within one year from the date of their making. Accord, *Caplis v Monroe,* 228 Mich 586; 200 NW 123 (1924).

At trial, the testimony of the litigants was in agreement that no time of performance was stipulated in the contract terms. Further, no evidence was adduced upon which the trial judge could find that the contract at the time of its making could not be performed within one year. Accordingly, we disagree with the trial judge's finding of fact on that facet of the case.[3] 1963 GCR 517.1, *Mazur v Blendea,* 74 Mich App 467; 253 NW2d 801 (1977). The mere fact that performance of the contract, for whatever reason, extended beyond one year's duration is insufficient to establish that by its terms it was not to be performed within one year from the date of its making.

Our decision that the oral construction contract does not come within the statute of frauds, and therefore is enforceable, does not, however, relieve the plaintiff of his burden of establishing by a preponderance of evidence the basis for his recovery. Trial testimony by the litigants has established a range of $53,850 to $48,000 in which the

---

[3] The trial judge found, specifically, that the contract could not be performed within one year.

contract price may be found as a fact by the trial judge. Thus, some basis for recovery is available, providing plaintiff establishes the existence of a breach and the amount of the contract price earned by his performance. Other evidence as to the reasonable value of the contract performance may be considered by the trial judge in ascertaining the contract price.

This Court has held that where an express verbal contract exists, as it appears to in this case, *quantum meruit* is inapplicable as a theory of recovery, being founded upon a contract implied in law. *Cascade Electric Co v Rice,* 70 Mich App 420; 245 NW2d 774 (1976). However, if the trial court finds that changes in the contract performance were authorized without a price being stipulated, *quantum meruit* may be used to formulate any recovery due the aggrieved party. *Jarosz v Caesar Realty, Inc,* 53 Mich App 402; 220 NW2d 191 (1974), *lv den,* 392 Mich 811 (1974).

Since we have concluded that the oral construction contract is enforceable, it is also necessary that we briefly indicate against whom it is to be enforced. Although recent authority has not addressed this point, the applicable principle may be found in *Carmody v Powers,* 60 Mich 26; 26 NW 801 (1886). There, the Court held that an agreement with individuals concerning acquisition of the stock of a corporation they were to form is necessarily a personal contract, the corporate entity not being in existence at the time of contracting. Similarly, in the case under review, no corporate entity existed at the time the litigants entered into the contract. However, it was the apparent intent of the parties that the contract was to be binding at the time of its making and the plaintiff commenced performance thereunder. It

follows that since the corporation never came into being the contract was personal. The trial judge should make a factual determination as to who is bound by its terms.

We further hold that the statute of frauds[4] is *not* a bar to recovery by the plaintiff as to the $10,000 paid for stock in the corporation to be formed. Some interest in the land acquired in part through the use of that money may be created as necessary to facilitate recovery. However, we reject the plaintiff's contention that failure to form the corporation ipso facto created a partnership among the promoter-defendants and the stock subscribers. Plaintiff cites in support of this proposition *Whipple v Parker,* 29 Mich 369 (1874). But it was stated by the Court in *Whipple* that a finding of a partnership relation was unnecessary to the resolution of that case. Accordingly, no binding precedent is thereby created. *Hett v Duffy,* 346 Mich 456; 78 NW2d 284 (1956).

A more recent case than *Whipple* contains dicta as to the nature of the relationship between promoters and stock subscribers where the corporation does not come into existence. In *Campbell v Rukamp,* 260 Mich 43; 244 NW 222 (1932), the Court held that where the corporation is not formed, the promoters as well as the stock subscribers are liable as partners to creditors of the business. The Court continued, stating that the promoters and stock subscribers do not sustain the relationship of partners *inter se.*

---

[4] The pertinent text of the statute applied by the trial court is as follows: "No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing." MCLA 566.106; MSA 26.906.

We find that statement in *Campbell* more appealing than the position articulated in *Whipple* and adopt it as the rule of law in Michigan. For a partnership to exist, it must be shown by an agreement, since it is the intention of the parties that is of prime importance in ascertaining the existence of a partnership. *Lobato v Paulino,* 304 Mich 668; 8 NW2d 873 (1943). See also, *Falkner v Falkner,* 24 Mich App 633; 180 NW2d 491 (1970). This is a question of fact for resolution by the trial judge.

Where a promoter receives all or part of the stock subscription price and the corporation is not formed, ordinarily the subscriber's remedy is an action against the promoter for return of the amount paid. See discussion and cases cited at 41 ALR2d 519. Failure to organize the corporation has been termed a failure of consideration, creating liability of the promoters to the subscribers for the amount received. *Johnson v Hulse,* 83 Cal App 111; 256 P 551 (1927). Similarly, the Michigan Supreme Court has held that incorporation is a condition precedent to the subscriber's liability. *Menominee Community Building Co v Rueckert,* 245 Mich 37; 222 NW 162 (1928).

Whether plaintiff's remedy extends beyond the aforementioned action depends upon the facts found from the evidence. If circumstances established that constructive trust is an appropriate remedy, the statute of frauds will *not* preclude its imposition. See *Kren v Rubin,* 338 Mich 288; 61 NW2d 9 (1953).

Constructive trust, being a fraud-rectifying remedy created in equity, arises independently from the intention of the parties. It will be imposed where property is acquired by fraud, undue influence, or other circumstances that render it uncon-

scionable for the wrongdoer to retain title or the benefits derived therefrom. *Potter v Lindsay,* 337 Mich 404; 60 NW2d 133 (1953). The requisite fraud may be actual or constructive and may arise from violation of fiduciary obligations. *Frank v Patton,* 251 Mich 557; 232 NW 211 (1930).

By the foregoing catalog of possible forms of recovery open to plaintiff, we are not suggesting that any particular one should be utilized in this case. That determination resides initially with the trial judge and depends upon the facts found from the evidence. If the transaction entered into by the litigants is found by the trial judge to be tainted by fraud, bad faith, dishonesty, or other similar circumstance warranting a constructive trust remedy, then the statute of frauds is irrelevant to the availability of recovery. Absent such findings, the traditional remedy of an action for return of the subscription price paid may be the only avenue open to plaintiff.

One final aspect must be discussed to aid resolution of this controversy on remand; that is the relation between promoters and subscribers of stock in a corporation to be formed. The Michigan Supreme Court has found that promoters stand in a fiduciary relationship to members of the company and corporation. *American Forging & Socket Co v Wiley,* 206 Mich 664; 173 NW 515 (1919). See also *Koppitz-Melchers, Inc v Koppitz,* 315 Mich 582; 24 NW2d 220 (1946). However, those cases, as with others addressing the issue, were decided in the context of actions by the corporate entity, or on its behalf, to recover for the wrongful acts of the promoters. The relationship, absent the eventual formation of the corporation, has been left undefined.

We hold that where the corporation is never

formed, a fiduciary relationship obtains between the promoters and stock subscribers and subsists until either the relationship is dissolved by complete withdrawal of the subscriber from the enterprise, or it is converted to another organizational form by agreement of the parties. Subscribers repose their trust and confidence in the promoters that the promoters will deal with them honestly and use their best efforts in bringing into existence the corporate entity for the purposes contemplated at the inception of their relationship. It is that trust and confidence that is the hallmark of a fiduciary relationship. We note that a similar result was attained by the Court of Appeals of Arizona in *Johnson v Nychyk,* 21 Ariz App 186; 517 P2d 1079 (1974). Therefore, this establishes the standard by which the trial judge should review the conduct of defendants in this case.

We reverse the verdict of the trial court and remand for further proceedings not inconsistent with this opinion. The trial judge may, in his discretion, hold additional evidentiary hearings or make his factual determination from the present record. We do not, however, opine that a new trial is necessary.

Reversed and remanded. Costs to abide the outcome.